JUNE 1822.

Jones
vs
Slubey

DECREE AFFIRMED.

COURT OF APPEALS, JUNE TERM, 1822.

JONES *vs.* SLUBEY.

*A conveyance without any valuable consideration, and purely voluntary, in se eret trust for the use of the grantor's wife and children, is fraudulent in law, and void as to creditors, who were such before and at the execution of said conveyance.*

*It is not necessary that a creditor, in order to set aside such a conveyance, should show the grantor to have been insolvent at the time of its execution, it is sufficient that he is considerably indebted to the creditor, and that no other property appears sufficient*

APPEAL from chancery. The facts stated in the bill which was filed by the appellee against *Nicholas S. Jones*, (the appellant,) *Mary Brown*, the Trustees of *James Alston*, and the President and Directors of the Mechanics Bank of *Baltimore*, were, that the appellant, and *David Jones*, being merchants, and in copartnership, became indebted to the appellee in the sum of $10,896 73, for which they gave their bond. Suit was instituted on the bond, and in 1812 judgment was obtained against the appellant for the said sum, with interest from the 12th of May 1809, and costs. The judgment was kept alive by the proper process, from term to term, until March 1814, when a *fieri facias* was issued and returned *Nulla Bona*. The appellant was in 1807, under a deed to him from *David*

*to satisfy such debt, other than that contained in the conveyance.*

*An answer responsive to a bill, is evidence, but only entitled to the same weight that parol evidence is entitled to.*

*Parol evidence of declarations and intentions, is inadmissible to raise a trust inconsistent or at variance with the expressed intention of a deed, where the facts and circumstances would not of themselves, by implication or construction of law, be sufficient to do so—Nor can such a trust be created for the benefit of a third person, and to defeat a complainant's equity, by an answer alleging declarations on intentions at variance with the expressed intention of a deed*

*Lands being vested in the wife of N J in fee tail, and she and her husband making an absolute conveyance of the same in fee to D J. and his reconveying to N. J. the husband, in fee, also by an absolute deed, and the husband more than twelve months afterwards, conveying the same property to M. B. by an absolute deed in fee, are not of themselves, facts sufficient to raise a trust by implication of law for the benefit of said wife and her children; nor are the answers to a bill in equity, filed to set aside the last conveyance, and to render the property subject to the debts due by N J the husband, prior to such conveyance, stating such conveyance to have been made in trust for the benefit of said wife and children, sufficient to sustain the same, and to defeat the object of the bill. Nor is it necessary in such a bill, the wife being dead, and leaving children, to make the children parties.*

*If a defendant in equity, in answer to a bill for the specific performance of a parol agreement, admits the agreement, and does not rely on the statute of frauds, the agreement will be enforced against him; otherwise, if he relies on the statute*

*Where a judgment creditor files a bill for the sale of property to satisfy his debt, a decree that the property be sold, and the proceeds brought into court, to be applied by the court to the payment of such part of the debt as may appear to be due, is correct, provided any part of such debt be due.*

*Jones*, seized and possessed of several houses and lots in

the city of *Baltimore*, all of which, on the 14th of May 1808, he voluntarily conveyed to *Mary Brown*, his mother-in-law, for the nominal consideration of five dollars, and she holding said property in secret trust for the appellant, conveyed, at his desire, a portion of the same to *Charles & James Alston*, to secure them for paper loaned to the appellant for discount in the Mechanics Bank of *Baltimore.* *Charles Alston* died about two years before the filing of the bill, and *James Alston*, who survived him, was also dead, but before his death became an insolvent debtor, availed himself of the benefit of the insolvent laws, and conveyed all his estate, &c. to *James Sterett*, &c. who now hold the legal title in said property in trust for the appellant, after payment of the debt due, (if any,) to the Mechanics Bank. The bill further stated, that the appellee believed the conveyance from the appellant to *Mary Brown*, was made to evade the payment of the appellee's debt, which was due at the date of said conveyance, though the bond was afterwards executed, or, that if that was not the object, that the same was originally made in secret trust, and will, after the debt due to the bank shall be paid, be held by *Mary Brown*, for the use and benefit of the appellant, who had enjoyed the use and benefit of the property from the time of the conveyance, and was still enjoying it. That no *fieri facias* could be laid on the same, or if it could, that the appellee's remedy would not be complete at law. *Prayer*, that the president and directors of the Mechanics Bank of *Baltimore*, and the trustees of *J. Alston*, might discover whether any and what sum of money was due to them from the appellant, &c. That *Mary Brown* might be compelled to disclose the nature of the trust reposed in her by the appellant, by his said conveyance to her; and for a decree to set aside and vacate said conveyance to *Mary Brown*, as voluntary and fraudulent, and for the sale of all of said property, and that the proceeds of the same might be applied to satisfy the appellee's judgment. There was also a prayer for general relief, &c. The *answer* of *N. S. Jones*, (the appellant,) stated, that he and his brother *D. Jones*, were nephews of the appellee, and about the year 1806 formed a copartnership as merchants in the city of *Baltimore*, under his patronage, and at his express desire, and with a promise from him of aid and assistance. The

copartnership existed until the year 1810. In September 1806, he the appellant intermarried with *Frances*, the daughter of *John Brown*, and at that time, and until 1811, was in good credit, and in the constant habit of discharging all his just engagements. *Frances*, at the time of said marriage, was possessed of the property mentioned in the deed of conveyance from herself and the appellant, to *D. Jones*, and held the same in fee tail under a devise to her by her deceased father. *Frances* being desirous to bar the entail, and to settle said property upon herself, and such children as she might thereafter have by the appellant, executed said conveyance, jointly with the appellant, to *D. Jones*, on the 30th of April 1807, and *D. Jones* by his deed dated the same day, reconveyed said property to the appellant, to enable him to create the said trust. The answer further stated, that the appellant afterwards by deed, dated the 14th of May 1808, conveyed said property to his mother-in-law, *Mary Brown*, in fee simple; and although said deed appears on the face of it to be absolute, yet it was intended for the use of the said *Frances*, and her children, agreeably to the original intention of the said *Frances* and the appellant, as before mentioned; and the appellant positively declared, that said entail was barred for the purpose of creating the aforesaid trust, and that he believed the said *Frances* never would have joined with him in the deed to *D. Jones*, but upon the express condition that the property was to be conveyed by the appellant in trust for the sole benefit of herself and her children. At the time the appellant executed the deed to *Mary Brown*, he was in good credit. In 1809, the appellee presented to the appellant, and *D. Jones*, the bond mentioned in the bill, and requested them to sign it, alleging it to be the amount due by them to him for goods sold, and money lent them, and observed that the bond was to be taken only for form sake, and to prevent the interference of one *R. S. Thomas*, in the concerns of the appellant and *D. Jones*, the latter being about to marry the daughter of the said *Thomas*. The appellant refused to sign the bond, alleging that it was for a sum much larger than he admitted to be due, and which he offered to show by reference to the accounts between them. *D. Jones* signed the bond, because his uncle, the appellee, threatened to prevent his marriage with *Thomas's* daughter if he did not sign it.

After some weeks, and for the reasons urged by the appellee as before mentioned, and believing that the bond was to be merely nominal, and only intended to cover whatsoever sum might, upon a fair investigation, be found to be justly due to the appellee, and being assured by him that the claim would never be enforced, inasmuch as the appellant and *D. Jones* were his nearest relations, the appellant signed the same. The answer further alleged, that the amount due by the appellant and *D. Jones,* to the appellee, at the execution of said bond, was only $4821 39. The appellant admitted that suit was instituted on the bond, and judgment obtained against him, he being informed he could make no defence at law; but averred that he ought to have been credited with $2298 76, and that judgment should only have been entered for the balance, &c. He denied that *Mary Brown* held said property in secret trust for his use; but that the same was conveyed to and was held in trust by her, for the benefit of his five children by his wife *Frances,* she being dead. He also denied that he made the deed to *Mary Brown* for the purpose of evading the appellee's claim, because he did not know, at the execution of said deed, what amount he owed the appellee, there being at that time a running account between the copartnership and the appellee, and that he paid the appellee several sums after the execution of the deed. The answer further states, that *Charles* and *James Alston* became the appellant's endorsers at the Mechanics Bank, and that *Mary Brown,* without the interference of the appellant, executed the deed to the *Alston's* for their security, and that the property mentioned in that deed was not the same property conveyed by the appellant to *Mary Brown,* in trust as aforesaid, but was held by her in her own right. The answer of *Mary Brown* stated, that her deceased husband devised to his daughter *Frances,* in fee tail, all the property mentioned in the deed from *Frances* and her husband, (the appellant,) to *D. Jones.* That *Frances* intermarried with the appellant in September 1806, and after her marriage, being desirous to settle said property upon herself and the children she might have by her said husband, joined with him in the deed to *D. Jones,* dated the 30th of April 1807, for the purpose of barring the entail, and creating said trust; and *D. Jones* on the same day conveyed said property back to the appellant. That the appellant, in order

to carry into effect the intention of his wife, did by his deed of the 14th of May 1808, convey to this defendant all said property, in fee simple, but in trust for the use and sole benefit of said *Frances*, and of such child or children as she then had or might have by the appellant. That this defendant paid no money consideration to the appellant for said conveyance to her. She admitted that she conveyed to *C*. and *J. Alston* the property mentioned in her deed to them, to indemnify them as endorsers for her son-in-law, the appellant, but averred that the said last property was her own individual estate, and that she executed said deed of her own accord. This answer also stated the death of *Frances*, and her leaving five minor children.

The *answer* of the president and directors of the Mechanics Bank of *Baltimore* stated, that there was due to them from the appellant the sum of $991 51, being the balance due of a loan made by them to him on notes drawn by *C*. and *J. Alston*, in favour of and endorsed by the appellant, and that they had no other security for the same except the mortgage from *Mary Brown* to *C*. and *J. Alston*, &c.

The *answer* of the trustees of *James Alston* admitted that they were appointed his trustees, he being an insolvent debtor, &c. and that he executed to them, as trustees, a conveyance of all his property on the 27th of March 1818.

*Testimony* was taken and returned under commissions issued for that purpose. The judgment, deeds, &c. referred to in the bill and answers, were exhibited, but the only exhibits which it seems material to set out are—1. *Exhibit* A. An account current of the complainant against *N. S.* and *D. Jones*, commencing on the 19th of February 1806, and stating a balance due from the latter to the former on the 13th of May 1809, of $10,896 73, with the following acknowledgment, viz. "*Baltimore*, May 12th, 1809. We hereby acknowledge the above balance of ten thousand eight hundred and ninety-six dollars and seventy-three cents, to be justly due to *Nicholas Slubey*, exclusive of interest on each advance of cash, and such cash as was received by us from the time of such advance to and receipt by us, which, with interest to be calculated on the above balance until paid, we promise to pay said *Nicholas Slubey*, his heirs, executors or administrators. Witness our hands and seals the year and day first above written. *David Jones*, (L S)
*Nicholas S. Jones*." (L S)

2. *Exhibits* C and B J, are accounts current of *N. S.* and *D. Jones* against the complainant, one of them commencing on the 10th of April 1806; and ending on the 26th of December 1806, leaving a balance due to the complainant of $4380 57, and the other commencing on the 26th of January 1807, and ending on the 27th of January 1808, leaving a balance, including the above balance, due to the complainant, of $4919 89.

Kilty, Chancellor, (July term 1819.) The object of the bill is to set aside a deed therein referred to from *N. S. Jones*, one of the defendants, to *Mary Brown*, another defendant, as voluntary and fraudulent, and for the sale of the property mentioned therein; to satisfy a judgment obtained against him by the complainant. The defence set up by *N. S. Jones* is, that the land so conveyed to *Mary Brown* had been the property of *Frances Brown*, the wife of the said *N. S. Jones*, devised to her in fee tail. That she being desirous to bar the entail, and settle the property on herself and such children as she might have, executed a deed, jointly with *N. S. Jones*, to *D. Jones*, who on the same day conveyed it to *N. S. Jones*; and that *N. S. Jones* conveyed the same, about thirteen months after, to *Mary Brown*, in fee; but intended for the use of the said *Frances* and her children, agreeably to the original intention of the said *Frances* and the said *N. S. Jones*. These intentions of the parties are relied on in the argument, as forming a contract, or rather contracts, both before and after the marriage, so as to justify the conveyance to *Mary Brown*. But such contracts would have required a course different from the one pursued, which was an absolute conveyance to *N. S. Jones*. The interest abiding in him for nearly thirteen months, and a conveyance in fee to *Mary Brown*, without any declaration of the trust now set up, and from all the circumstances disclosed in the evidence, I am clearly of opinion that the defence is not sustained, and that the complainant is entitled to relief, inasmuch as the conveyance by *N. S. Jones* debarred him of his remedy at law on the judgment. The counsel may therefore prepare a decree to set aside the deed from *N. S. Jones* to *Mary Brown*, and for a sale of the property conveyed thereby. Whether the property conveyed by *Mary Brown* for the indemnity of the *Als-*

June 1822. *tons*, is to be referred to in the decree, will depend on its
being the same, or different. And the question as to the
application of the proceeds to that object, will depend on
the same question. The amount due to the complainant
may also be a subject for the report of the auditor, con-
cerning which it was contended, that the bond was given
for more than was due, and that the money advanced was
intended as a present.

The chancellor afterwards *decreed*—"that the deed exe-
cuted by the defendant, *N. S. Jones*, on the 14th of May
1808, for conveying certain real estate therein mentioned
to the defendant, *Mary Brown*, be and the same is here-
by annulled, vacated, and set aside as fraudulent." "That
the real estate in the said deed and proceedings mention-
ed, or such part as may be necessary, shall be sold," &c.
From which decree the defendant, *N. S. Jones*, appealed
to this court.

The cause was argued before BUCHANAN, EARLE, MAR-
TIN, and STEPHEN J.

*Wirt*, (Attorney General of *U. S.*) and *Moale*, for the
appellants, contended, 1. That the complainant was not a
creditor of *Jones* when the deed from him to *Brown* was
executed, and that therefore said deed, although volunta-
ry, if *bona fide*, could not be impeached by the complai-
nant, though he might be a subsequent creditor.

2. That the execution of the acknowledgment of the
claim, *exhibit A*, (called in the bill a bond,) was obtained
under false pretences, and could only cover whatever sum
of money should be found due upon a fair investigation
and settlement of accounts between the complainant and
*Jones*. That the account itself was incorrect, and con-
tained charges for money not owing from the latter to the
former.

3. That the deed of May 1808, was not made by the
appellant to *Brown*, for the purpose of evading the pay-
ment of the complainant's judgment, or the obligation
upon which it was rendered. That the appellant was sol-
vent at the time that deed was executed, and continued
solvent for three years afterwards; and that there was no
proof that he ever was in insolvent circumstances.

4. That the deed of 1808 was the completion of a mar-
riage settlement of the property of Mrs. *Jones*, the wife
of the appellant, upon herself and children, executed

after marriage, in pursuance of an ante-nuptial parol contract; and it *bona fide* was valid against general creditors.

5. That the property mentioned in the deed of 1808 was conveyed in trust for the use of Mrs. *Jones* for life, remainder in special tail to the children of the appellant and wife—That this deed was made for a valuable consideration, and *bona fide*, and was therefore valid against creditors, although executed after marriage.

They contended that the marriage settlement consisted of the deeds of 1807 and 1808—the first was the consideration, and the latter the completion of the settlement. That the bill was in the nature of a bill of discovery, and the answers, being responsive to it, declared the whole truth, and were evidence of the entire extent and nature of the trust. That the credit due to the answers was conclusive, and they would avail against one witness, unless there were corroborating circumstances of the truth of his testimony. The defendants were called on to disclose, and there was no witness produced to refute the declaration of the trust set out in the answers. That it was immaterial whether the parol contract was made before or after marriage, as it was prior to any right or claim which the appellant had to the property. They also urged, that a parol agreement before marriage furnished a consideration sufficient to support a settlement after marriage. That courts of equity had always shown great alacrity in admitting circumstances to bring those settlements, after marriage, within the support of a valuable consideration. They cited 1 *Eq. Ca. Ab.* 354| *White vs. Drake,* 1 *Keb.* 6. 1 *Vern.* 440. *Ralph Bovey's* case, 1 *Vent.* 193. *Rob. on Fraud. Convey.* 218. *Lloyd vs. Fox,* 2 *Keb.* 700. *Griffin vs. Stanhope, Cro. Jac.* 454. *Rob. on Fraud. Convey.* 220. *Lavender vs. Blackstone,* 2 *Lev.* 146. *Dundas vs. Dutens,* 1 *Ves. jr.* 196. In the case at bar they contended, that the consideration for the post-nuptial settlement was valuable and *bona fide,* and valid against purchasers, and *a fortiori* valid against general creditors. They referred to *Pre. in Chan.* 101; and 3 *Eq. Ca. Ab.* 715. A settlement after marriage made upon the payment of money as a portion, or of an additional sum, or *even on an agreement to pay,* if such payment is *afterwards made,* is good against subsequent creditors. For this they referred to *Brown vs. Jones,* 1 *Atk.* 190. *Wheeler vs.*

*June* 1822.

*Jones*
vs
*Slubey*

June 1822. *Caryl, Ambl.* 121. *Jewson vs. Moulson,* 2 *Atk.* 417. *Mid-
dlecomb vs. Marlow, Ibid* 520.   *Jones vs. Marsh, Ca. Temp.
Talb.* 64.   *Ramsden vs. Hilton,* 2 *Ves.* 304.   *Ward vs. Shal-
lett,* 2 *Ves.* 18.   *Russell vs. Hammond,* 1 *Atk.* 13.   They
further contended, that either of the following considera-
tions, moving from a wife, would support a settlement *after*
marriage—1st. Relinquishment of the wife's interest under
a former settlement. 1 *Eq. Ca. Ab.* 49, 23.   2d. Relin-
quishing an interest under a bond, even although such in-
terest be contingent. *Ward vs. Shallett,* 2 *Ves.* 16.   3d. Re-
linquishment of a jointure. *Ball vs. Burnford, Pre. in Chan.*
113.   *Scott vs. Bell,* 2 *Lev.* 70.   *Cottle vs. Frippe,* 2 *Vern.*
220. 1 *Bro. P. C.* 444.   4th. Parting with a right of dower.
*Lavender vs. Blackstone,* 2 *Lev.* 147.   5th. The wife's
concurring with her husband in destroying a settlement
upon her children—as joining in levying a fine to destroy
contingent remainders. *Scott vs. Bell,* 2 *Lev.* 70.   And 6th.
Parting with her own estate, or making a charge upon it
in favour of her husband. *Clark vs Nettleshut,* 2 *Lev.* 148.
*Chapman vs. Emory, Cowp.* 278.

They also contended that the children of Mrs. *Jones*
ought to have been made parties.

*Winder* and *Magruder,* for the appellee, relied upon
*Randall vs. Morgan,* 12 *Ves.* 74.   *Lloyd & Molte vs. Inglis,*
1 *Desaus. Cha. Rep.* 333.   *Stoddert vs. Hoye,* and *Farrow*
*vs. Teackle,* in this court; and *Atherley,* 212, 216.

BUCHANAN, J. delivered the opinion of the court.   We
can perceive nothing amiss in the chancellor's decree.

The exhibit *A,* the instrument of writing upon which the
suit at law was instituted, is an acknowledgment on the
12th of May 1809, under the hands and seals of the de-
fendant *Nicholas S. Jones,* and *David Jones,* (who were
partners in trade,) at the foot of an account current be-
tween them and the complainant, from the 19th of Februa-
ry 1806, of a balance due on that account to the com-
plainant of $10,896 73, with a promise to pay the amount;
and according to the account itself it appears, that on the
25th of April 1808, they were indebted to him upwards of
$8,000.   By the exhibits *C* and *B J,* which are accounts
rendered by *Nicholas S. Jones* and *David Jones* themselves,
purporting to be accounts current between them and the
complainant for the years 1806 and 1807, there appears to

have been a balance due to the complainant, on the 27th of January 1808, of nearly $5,000; and *Nicholas S. Jones,* in his answer, admits, that at the time of executing the acknowledgment at the foot of the complainant's account, there was a balance due to him, of $4821 39. So that, whether the amount actually due was equal to the sum claimed by the complainant, and acknowledged by the defendant *Nicholas S. Jones,* and *David Jones,* or not, it is manifest that a large amount was due. The bill alleges, that the deed to *Mary Brown* of the 14*th of May* 1808, was made to evade the payment of the complainant's debt, or in secret trust for the use of *Nicholas S. Jones;* and seeks a disclosure in relation to that deed only, for the purpose of setting it aside, and subjecting the real estate therein mentioned, to be sold to satisfy the judgment obtained by the complainant against *Nicholas S. Jones,* on the acknowledgment by him and *David Jones.*

The answers, therefore, of *Nicholas S. Jones* and *Mary Brown,* are responsive to the bill, only so far as they relate to that deed, and so far only can they be received as evidence in the cause, and not as they respect the alleged object of the deed of the 30*th of April* 1807, from *Nicholas S. Jones,* and wife, to *David Jones,* and from *David Jones* back to *Nicholas S. Jones.* With that restriction, grant to them all the effect and operation of an uncontradicted answer, and also, that the matter disclosed is properly the subject of parol evidence, and they only prove, that the deed to *Mary Brown* was without any valuable consideration, and purely voluntary, in secret trust for the use of the wife of *Nicholas S. Jones,* and the children of that marriage, which is clearly fraudulent in law, and void as to the complainant, who was a creditor to a large amount before and at the time the deed was executed, and has done every thing at law necessary to entitle him to the aid of a court of equity.

It is not necessary, as has been supposed, to show that *Nicholas S. Jones* was in debt to the extent of insolvency, at the time of making the deed to *Mary Brown,* to enable the complainant to defeat that deed. But it is enough that he was largely indebted to the complainant; and it no where appears that he had at the time any other property than what is contained in that deed. But if it should be admitted, that the whole of the answers, as well in relation to the alleged object of the deed from *Nicholas S. Jones*

and wife, to *David Jones*, and from *David Jones* back to, *Nicholas S. Jones*, as to the deed to *Mary Brown*, ought to be considered as responsive to the bill; yet, though un-contradicted, they could not be taken to establish any thing in bar of the relief prayed, which parol testimony would not be admitted to prove; for it is as evidence only, that they could be received.    And as no parol evidence of declara-tions or intentions, could be admitted to raise a trust, in-consistent, or at variance with the *expressed* intention of a deed, where the facts and circumstances would not, of themselves, by implication or construction of law, be suf-ficient, on the ground of its contradicting the instrument —so neither can a trust be set up, for the use or benefit of a third person, to defeat a complainant's equity, by an an-swer alleging declarations or intentions at variance with the expressed intention of a deed.

Therefore, as the facts and circumstances disclosed in this case; that is, that the estate was originally derived to the wife of *Nicholas S. Jones*, from her father, in fee tail, that she united with her husband in making an absolute deed in fee to *David Jones*, that he reconveyed it, by an absolute deed, in fee to *Nicholas S. Jones*, and that *Nicho-las S. Jones*, more than twelve months afterwards, convey-ed it to *Mary Brown* by an absolute deed in fee, are not of themselves sufficient, by implication of law, to raise a trust for the use of his wife, and her children, by her mar-riage with him, in the real estate so conveyed to *Mary Brown;* the answers alleging the several deeds to have been made with that *intention*, cannot be taken to raise such a trust, against the *expressed* provisions and intentions of the deeds themselves, and in that way, to sustain the deed to *Mary Brown*, (which otherwise the law would deem fraudulent,) for the purpose of defeating the object of the bill.    It is not, as has been contended in argument, like the case of a post-nuptial settlement, by a husband on his wife or children, for a consideration moving from the wife, where the *use* is expressed in the deed of settlement, and not left to be raised by parol evidence.

If the deed to *Mary Brown* had been executed on, the same day with that to *David Jones*, by *Nicholas S. Jones* and wife, and was *expressed* to be in trust for the use of his wife, there might be a foundation for presuming, that the deed to *David Jones*, by which the estate tail in her

was destroyed, was the consideration for which it was made. But it is absolute to *Mary Brown*, and was executed more than a year after the date of the deed to *David Jones*; and there is nothing to show that a settlement on the wife or children of *Nicholas S. Jones*, was contemplated by any of the parties, at the time of making either of the deeds, except the allegations in the answers, by which such an *intention* is attempted to be set up.

Nor can it be assimilated, as has been attempted in argument, to the case of a bill for the specific performance of a parol agreement; where if the defendant admits the agreement, without insisting on the statute of frauds, performance will be decreed.  There, there is no contradiction of a deed, the admission is beneficial to the complainant, and against the interest of the defendant, who by not insisting on the benefit of the statute, is taken to have renounced it. And it is on the ground of his having waived the benefit of the statute, (which is with himself,) that performance will be decreed; for if in that case the defendant admits the agreement, but insists upon the statute, there can be no decree.  But in this case, the complainant has not waived the rule of evidence, that parol testimony cannot be received to contradict a deed.  And no parol evidence of *declarations* or *intentions* could be admitted, to raise the trust attempted to be set up by the answers.

This also furnishes a sufficient answer to the suggestion, that the children of Mrs. *Jones* should have been made parties to the proceedings, as no interest is shown in them to be affected by any decree that can be given; and it cannot be permitted to a defendant to delay the bringing of a suit to issue, by merely alleging an interest in a third person.

As to the objection, that the judgment obtained at law by the complainant is for more than is actually due, and that the chancellor ought to have made the proper allowance, &c. it will be seen, on reference to the record, that by the decree, the proceeds of the sale of the property are directed to be brought into the court of chancery, to be applied under the directions of the chancellor; and the chancellor, in his opinion says, that the amount due will be a subject for the report of the auditor, when all credits to which the defendant, *Nicholas S. Jones*, may be entitled, will be allowed him.

DECREE AFFIRMED.