JOHN GLENN
vs.                    } JULY TERM, 1848.
BEALE  RANDALL  ET  AL.

WHETHER a conveyance is fraudulent or not under the statute of 13 *Elizabeth*, *ch.* 5, depends upon its being made upon a good  consideration and *bona fide*. It is not sufficient that it is upon a good consideration *or* bona fide.  It must be both, and if not, is void as to creditors ; and the words "good consideration" in the statute, must be understood to include valuable as well as good.

Though a complainant in equity may read a portion of an answer, and is not bound, as he would be at law, to read the whole, yet he will not be allowed to read a passage from the answer for the  purpose of fixing the defendant with an admission, without reading the explanations and qualifications by which the admission may be accompanied.

The bill alleges, that the  deeds sought to be vacated as fraudulent, are destitute of any valuable consideration of any description ; and the defendants are expressly asked to discover what consideration was paid, and to whom ; and the answer admits, that a part of the purchase money was paid after the execution of the deeds in discharge of the debts of the grantor assumed by the grantees, a part having been previously paid.   HELD—

That the plaintiff should not be permitted to catch hold of the admission that the consideration was not all paid to the grantor at the time of, and prior to, the execution of the deeds, and exclude that portion of the answer which states how and when it was paid.

If a plaintiff chooses to read a  passage from the defendant's answer, he must read all the circumstances stated in the passage, and if the passage so read contains a reference to any other passage, that must be read also.

Where deeds are impeached for fraud, and it is shown by the admissions of the answers, that the considerations upon which they profess to have been executed, were not paid in manner and form, as declared upon their face, the party claiming under them will not be permitted to prove any other consideration in their support.

But this rule does not apply to a case where the object is not to set up any other additional consideration to the one mentioned in the deed, but to prove that *that* very consideration was paid, not to the grantor himself, but to his creditors, with his knowledge and at his request.

It is well established, that if a man buys land in the name of another, and pays the consideration money, the land will be held by the grantee in trust for the person who advances the purchase money.

An understanding, that the grantor might redeem the property when his circumstances improved, will not vitiate a conveyance, in other respects unobjectionable, the only effect of such a reservation being to convert an absolute conveyance into a mortgage, or to make an unconditional a conditional sale.

[This is a creditor's bill filed in the equity side of Baltimore County Court, on the 29th of September, 1841, by John Glenn, the complainant, in behalf of himself and other creditors of Beale Randall, one of the defendants. Its object is to vacate as fraudulent as against creditors, five several conveyances therein particularly described, all of which, with the facts of the case, are so fully set forth in the following opinion of the Chancellor, as to need no additional statement.]

THE CHANCELLOR:

That the plaintiff in this case is a fair and *bona fide* creditor of the defendant, Beale Randall, to a large amount, it is impossible to doubt. Indeed, I do not understand that this is disputed, though observations have been made in the course of the argument, the tendency of which is to show that with due diligence in rendering available the securities placed in his hands, the amount of this debt might have been materially diminished or entirely extinguished. There is, however, in my opinion, nothing in the case upon which the charge of negligence can be maintained against the plaintiff, and therefore his standing in court as a creditor to impeach these conveyances, must be conceded. The question, therefore, is, whether being a creditor, he has succeeded in establishing the ground which he has taken in his bill that the conveyances are void as having been made without consideration and to defeat and delay him in the recovery of his claim.

These deeds are assailed, as being repugnant to the statute of 13 *Elizabeth, ch.* 5, which avoids gifts of goods and chattels, as well as of lands, by writing or otherwise, made with intent to delay, hinder and defraud creditors. The statute, however, excepts from its operation, estates or interests in lands or

20*

chattels, conveyed or assured *bona fide*, and upon good consideration without notice of any fraud or collusion. 2 *Kent Com.*, 440. Whether the conveyance is fraudulent or not, is declared to depend upon its being made, upon a good consideration and *bona fide*, it is not sufficient, that it is upon a good consideration or *bona fide*. It must be both, and if not, is void as to creditors, and according to the authorities, the words good consideration in the statute must be understood to include valuable as well as good, for as Mr. Justice Story remarks, it cannot be supposed the statutes meant to protect conveyances made merely upon the consideration of blood and affection, though *bona fide*, and intended to leave unprotected, those which being also *bona fide*, are made upon a valuable consideration and of course compensatory. The question then to be decided, is, whether these conveyances were made upon a good consideration and *bona fide*. There are five of these deeds, the first is dated the 22d of April, 1834, from Beale Randall to Charlotte Randall, Henrietta Randall and Deborah Randall, his sisters, by which for the consideration of $742 27, expressed in the deed to have been paid by the grantees to the grantor, he conveys to them certain parcels of land which had been mortgaged by a certain William High to the grantor. The second is a deed from the same party to John T. Randall, his brother, dated the 22d of May, 1834, by which for the consideration of $6,000 alleged to have been paid by the grantee to the grantor, he conveys to the former, certain parcels of property in the city of Baltimore. The third is dated the 6th of September, of the same year, by which for the consideration of $500, declared in the deed to have been paid to the grantor, he conveys to his said three sisters, a piece of land in Baltimore county. The fourth is dated the 31st December, 1835, by which for the consideration of $2,500, also expressed to have been paid to the grantor by the grantee, the former conveys to the latter, his life interest in a parcel of real estate, in the city of Baltimore. And a fifth is a deed from John T. Randall to the before mentioned three sisters, dated the 29th of June, 1838, by which for the consideration of eleven thousand dollars, therein ex-

pressed to have been paid by the grantees to the grantor, the latter conveyed to them the parcels of property, which were embraced in the said deed from Beale Randall to him. It appears by the evidence and an exhibit, filed in the cause, that the property mentioned and described in the deed from Beale to John T. Randall, had been mortgaged by the former to Micha Lloyd, to secure the sum of $5,000, due from him to her, and that on the 29th of January, 1836, the mortgagee had executed a release of this mortgage to the said John T. Randall. The bill alleged, that the several conveyances of April, May and September, 1834, of December, 1835, and of June, 1838, were made and delivered without the passing of the several considerations therein respectively mentioned, or of any valuable consideration whatever, and were each and all of them covinously and fraudulently executed, to hinder, delay and defraud the creditors of the said Beale Randall, and especially to defraud the complainant as one of them, and to preserve the property in said deeds described, for the use and benefit of the said Beale, under cover of the names of his sisters and brother, who were all privy to such intent, and aided and assisted in the same, each well knowing of the existence of all said deeds, and combining and confederating together by separate instruments to carry out and consummate a common design; and the defendants are specially interrogated and asked to discover what consideration was actually paid, and how, and to whom it was paid, and why the several considerations were inserted in the deeds, and what communications passed between the parties prior to or at the time of the execution of the deeds, and from whom the proposition to make them came, and whether any agreement was entered into, in relation to said deeds or the uses to which they should enure, either prior to, or at the time, or subsequent to their execution. Deborah and Charlotte Randall are dead, and by their wills give the whole of their estates to their sister Henrietta Randall, who put in a separate answer to the bills. In this she states, that she and her sisters, were the real purchasers of all the property mentioned in the deeds, that the deed of the 22d of May, 1834, was executed to John

T. Randall, because Beale was to have the property thereby conveyed, returned to him, provided he could repay the sum of $6,000, the consideration paid, when his affairs should be settled, and as the said John T. lived in the city of Baltimore, and she and her sisters in the county, he could reconvey more conveniently than they could. That the several sums mentioned as the considerations for said conveyances were paid by her sisters and herself, who were the real purchasers, either at the time of the purchase, or that the same was assumed by her and them, and to be applied to the payment of the debts of the grantor, and has been so applied, a part prior to and the residue since the execution of the deed, that the mortgage debt to Micha Lloyd, was paid by her and her sisters, which was the reason for making the consideration of the deed from John T. Randall to her and her sisters, eleven thousand dollars.

That no conditions, either written or verbal, were entered into at the time, before or since the said purchases were made of said property, except that in regard to the property mentioned in the deed to John T. Randall, the privilege was to be reserved to the grantor to redeem the same as before stated, and the defendant avers that she has no money belonging to the said Beale Randall, nor the possession of any property to which he has any right, and that all said property was purchased in good faith of said Beale, at a full, fair and bona fide price, at his request and on his own terms, and that the purchase money therefor, has been fully paid, of the proper money of this defendant and her sisters. The answer then in reply to other allegations of the bill, proceeds to show the ability of the grantees to make the purchases, and how and from what sources they derived the means of paying the money. Before adverting to the evidence, it may be well to look at the case as it stands upon the bills and answers; the other answers, as will be found upon referring to them, all denying the fraud and giving in substance the same statement of the transaction as is given in that of Henrietta Randall. This answer, it will be observed, admits that a part of the purchase money of the property, was paid after the execution of the deeds in discharge

of the debts of the grantor, assumed by the grantees, a part having been previously paid, and it. is said that whilst the answer may be read for the purpose of showing that the money was not paid at the time and in the manner specified in the deeds, it is not competent to the defendants to rely upon it to show a payment at any other time or in any other manner. It was said by the Court of Appeals in *Ringgold vs. Ringgold*, 1 *H. & G.*, 82, that under a bill to account, the answer is no evidence of disbursements.

That such a bill is no more than a demand upon the defendant to show his receipts, and the legal proof of his expenditures, but the court also says, that every thing which the defendant discloses respecting the origin of his liability, must be taken together, and that you cannot use detached sentences against him. The bill in this case alleges, that the deeds are destitute of any valuable consideration of any description, and the defendants are expressly asked to discover what consideration was paid, how, and to whom. They are then asked to say, how it was paid, and to whom, and nothing would seem more unjust, than that the plaintiff should be permitted to catch hold of the admission, that it was not all paid to the grantor at the time of, or prior to the execution of the deeds, and exclude that portion of the answer which says, how, and when it was paid. The liability of the defendants to give up this property and account for the rent and profits for which the bill prays, depends upon whether they did or did not pay a valuable consideration for it, and upon the *bona fides* of the transaction. What they say upon this subject, relates to the creation of the liability, and all that they say must, therefore, be read, or else their whole meaning will not be understood. The rule, as established, appears to be this, that though a complainant in equity may read a portion of an answer, and is not bound as he would be at law to read the whole answer, yet he will not be allowed to read a passage from the answer for the purpose of fixing the defendant with an admission, without reading the explanations and qualifications, by which the admission may be accompanied. The rule as stated in 2 *Dan. Ch. Pr.*, 978,

is, that if a plaintiff chooses to read a passage from the defendant's answer, he must read all the circumstances stated in the passage, and if the passage so read, contains a reference to any other passage, that must be read also.   It appears to me, therefore, that the defendants have a right to rely upon their answer to show how and when the money was paid, not only because they are interrogated by the bill upon those subjects, but because the plaintiff had read, and was in truth compelled to read, the answer for the purpose of repelling the *prima facie* evidence of payment contained in the deeds themselves.   For if the answers and the evidence, to which the plaintiff has excepted, are discarded, there is nothing in the record to show that the money was not paid, as expressed upon the face of the deeds, and the acknowledgment of its receipt in them, is certainly *prima facie* evidence, though only *prima facie* as now conclusively settled in this state.   *Wolfe* vs. *Hauver*, 1 *Gill*, 85. Assuming that the answers are evidence of the payment of the money, in manner and form as stated in them, and I think they are, the evidence of payment to which the plaintiff has excepted, is not very material ; there can, however, be no doubt that the defendants have in the cause evidence free from exception, which does, to some extent at least, corroborate the answers. But it is said, that as these deeds are impeached for fraud, and it is shown by the admissions of the answers, that the considerations upon which they profess to have been executed, were not paid in manner and form as declared upon their face, that the party claiming under them, will not be permitted to prove any other consideration in their support, and for this, the cases of the *Union Bank* vs. *Betts*, 1 *Har. & Gill*, 175, and *Cole* vs. *Albers*, 1 *Gill*, 412, are relied upon.   It seems to me, however, that this case does not at all come within the principle settled by the Court of Appeals, in those referred to.   The object here is, not to set up any other additional consideration to the one mentioned in the deed, but to prove that *that* very consideration was paid, not, to be sure, to the grantor himself, but to his creditors, with his knowledge and at his request. It is not only a consideration, therefore, *ejusdem generis*, but

the very same identical consideration contained in the deeds, the only difference being, that it was not all paid to the grantor himself, but to others, at his request, and that such a payment is in legal contemplation a payment to him, appears to be very well settled. *Cro. Eliz.*, 222, 223. Believing, therefore, that these deeds may be supported as having been made upon valuable considerations, the next question is, were they made *bona fide?* for, as we have seen, the consideration must not only be valuable, but the deed must likewise be *bona fide.* The allegations of the bill to the contrary are all very explicitly denied by the answer, which asserts in positive terms that the property was fairly purchased at full prices and in good faith, and without any secret understanding or conditions with the grantor, except in regard to the property mentioned in the deed to John T. Randall, which, as before mentioned, he was to have the privilege to redeem when his affairs should be arranged. There is, therefore, nothing in the answer to affect the fairness and *bona fide* character of the conveyances, and I cannot see any thing in the proof from which a covinous and fraudulent purpose can be inferred, and especially it seems to me impossible to find in the evidence circumstances so pregnant with the presumption of fraud as to overrule the clear and strong denials of the answers.

The evidence of Messrs. Gatchell and Perine, the only witnesses examined on the part of the complainant, and the papers referred to by them, seems to me to be perfectly compatible with the fairness of the transaction. They tend to show, I think, that it was supposed all round that the security given to the complainant was considered adequate, and the other evidence leads to the conclusion that the sale of the property mentioned in the deeds, was to provide for the payment of the other creditors of the grantor, it being his purpose, as expressed in his letter of July, 1833, to give up all for the benefit of all. It appears that on the 16th of May, 1834, Beale Randall conveyed to the complainant, for his indemnity and security, the interest of the grantor in three commercial firms then doing business in the city of Baltimore, which interest was estimated by Mr.

Perine to be worth twenty thousand dollars. It also appears, from the evidence of Mr. Perine, that soon after the 20th of July, 1833, he prepared a statement of the affairs of Beale Randall, for the purpose of ascertaining what his situation was, and whether his friends would be safe in assisting him to go on. This statement, the witness said, was derived from information given him by said Beale Randall; but the estimates of the value of the property met with the sanction of the witness. According to this statement, which contained the property subsequently conveyed by Randall to his brother and sisters, he would have had a large surplus left after paying all his liabilities of every description. Now, at the date of the mortgage or assignment to the complainant by Randall, but one of the deeds drawn in question in this case had been executed, that of the 22d of April, 1834, and there is no ground for supposing, that if the security given to the complainant had not been considered adequate, that Randall would have refused to convey to him some portion of this property. Mr. Gatchell states, that he, acting for the complainant, made advances to Randall in the summer of 1833, and that these advances were made upon the faith of the statement prepared by Mr. Perine. This, it will be recollected, was some considerable time before the deed to the complainant was executed, and before the deeds now impeached were given, and does not at all prove that the security given the complainant was not regarded sufficient for his indemnity; the statement made by Perine appears to have been prepared for the purpose of ascertaining the ability of Beale Randall to meet the various engagements, and not with a view to give the complainant a specific lien on the property embraced in it; if it is otherwise, it is presumable the lien would have been demanded and given before the advances were made, and there is nothing in the case to show that any fraud or imposition was practiced by Randall upon the occasion. In other words, there is nothing to show that the value of his means to pay his debts was exaggerated, or their amount diminished; on the contrary, it may be fairly inferred that it was his impression, as well as the impression of the intelligent gentleman by whom the statement was made,

not only that he had abundant means to meet his pecuniary engagements, but that there would remain a handsome surplus; and if subsequent events have shown the fallacy of these expectations, there is no reason to believe that the disappointment has not been as unforeseen to Randall as to others. Considering the conduct of the parties in this light, and in view of the principle that fraud, though susceptible of being proved by circumstances, is never to be presumed, I am at a loss to conceive upon what ground the purchase from Randall by his sisters can be impeached as *mala fide*, and, especially, I do not see how the fraud can be established in opposition to the answers, which in the most positive terms deny the averment in the bill; these answers being evidence in favor of the respondents, although the equity of the bill is grounded upon the allegation of fraud. *Dilly and Heckrotte vs. Bernard*, 8 *Gill & Johns.*, 170. I am, therefore, of opinion, upon the whole case as disclosed by the pleadings and evidence, that these deeds must be supported, as having been made upon valuable considerations and *bona fide*, and this disposes of the case so far as relates to the deeds of the 22d April, 1834, the 6th of September, 1834, and the 31st of December, 1835. But it is supposed, that the deed of the 22d of May, 1834, from Beale Randall to John T. Randall, is more obnoxious to objection than the others, because the answers admit that the consideration was not paid by him, but by others, and it is insisted that as the deed can create no use in his favor, a secret trust in favor of another would be in conflict with the cases of *Jones vs. Slubey*, 5 *H. & J.*, 372, and *Birely vs. Staley*, 5 *Gill & Johns.*, 432.

It does not appear to me that the principle decided in those cases reaches this deed or impairs its validity, so far as relates to the sisters of the grantor by whom the consideration was paid.

It is perfectly well established, that if a man buys land in the name of another, and pays the consideration money, the land will generally be held by the grantee, in trust for the person who paid the consideration money. Mr. Justice Story says, that the clear result of all the cases is, that the trust of the legal

21

estate, whether taken in the names of the purchasers and others jointly, or in the name of others without the purchaser, whether in one name or several, whether jointly or successively, results to the man who advances the purchase money. 2 *Story's Equity*, 444, 445. And it will be found that the Court of Appeals in deciding the case of Jones vs. Slubey, recognizes this principle. In deciding that a conveyance, without a valuable consideration, in secret trust for the use of the grantor's wife and children, is fraudulent as to existing creditors, they say that no parol evidence can be admitted to raise a trust inconsistent or at variance with the expressed intention of a deed, where the facts and circumstances would not, of themselves, by implication or construction of law, be sufficient for that purpose. But if the facts and circumstances are sufficient, by implication, to raise such trust, then the trust will be raised, or will result from the such facts and circumstances : and it is too clear to be questioned that the fact that the consideration money was paid by one, whilst the deed is given to another, will, by implication, raise a trust in the name of and for the use of the former, such trusts being expressly excepted from the operation of the statute of frauds. *Maccubbin* vs. *Cromwell*, 7 *Gill & Johns.*, 163.

As, therefore, the purchase money for the property conveyed by this deed was paid by the sisters, though the deed itself was given to the brother, a trust results to them by implication or construction of law, which is free from the statute of frauds, and sanctioned by the adjudged cases. It is said, however, that the understanding that the grantor mightr edeem the property when his circumstances improved, will have the effect to vitiate the conveyance, it being a reservation of a benefit to the grantor, which makes it fraudulent as to his creditors. I do not think, however, that such a consequence can result from a reservation of this description, the only effect of it being to convert an absolute conveyance into a mortgage, or to make an unconditional, a conditional sale.

No case has been produced in which it has been decided that a reservation of this description has had the effect to vitiate a conveyance in other respects unobjectionable. Upon the whole,

therefore, I am opinion, that the plaintiff has failed to establish a title to the interposition of this court, and his bill must, therefore, be dismissed.

J. MASON CAMPBELL for Complainant.
T. PARKIN SCOTT for Defendant.

[The decree in this case was affirmed by the Court of Appeals.]