GEORGE F. LIVINGSTON, MARGARET E. DEWALD, and
JOHN A. DEWALD *vs.* JAMES E. HALL, and others.

*Appeal—Agreement of Counsel—Bills quia Timet—Posses-
sion of Complainant to be Alleged and Proved—Voluntary
conveyance from Wife to Husband.*

An agreement of counsel prescribing special terms for the hearing
of a case on appeal, and for the award of costs by the Court, can
have no effect in the appellate Court, where the case must be
heard and disposed of according to the Constitution and laws of
the State.

A bill *quia timet*, or to remove a cloud upon the title to real estate,
is brought in view of anticipated wrongs or mischiefs, and the
jurisdiction of the Court is invoked because the party fears future
injury to his rights and interests.   But to maintain a suit of this
character, it is, as a general rule, necessary that the plaintiff
shall be in the possession of the property, and, except where the
defendants are numerous, that his title, if a legal one, shall have

been established at law, or be founded on undisputed evidence, or long continued possession.

Those only who have a clear, legal, and equitable title to land connected with possession, have a right to claim the interference of a Court of equity to give them peace, or dissipate a cloud on the title; and the possession must be affirmatively alleged and shown.

A voluntary deed from a wife to her husband, made when she is surrounded by her infant children, and without provision for them, requires the strictest investigation and scrutiny, before a Court of equity will give it support.

A gratuitous conveyance by a wife of her property to her husband will be held void, unless it affirmatively appears from the attending circumstances, or otherwise, that it was her voluntary act, free from any undue influence exercised by the husband.

On a bill by a husband to quiet title to property conveyed to him by his wife, who had infant children, the consideration recited being natural love and affection, and one dollar, a Court of equity will not sustain the validity of the deed, in the absence of any allegation that the plaintiff was in possession of the property, or that he had been, or was about to be, disturbed in his right of possession, or that his title had been, or was threatened to be, called in question by an adverse claimant, and no proof being furnished of the facts attending the making of the deed.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*J. J. Wade,* for the appellants.

There is no allegation or suggestion of fraud or undue influence on the part of the husband in procuring the deed, and none can be presumed; on the contrary, in the absence of any allegation and proof to that effect, this Court will presume that it was made freely and fairly,

with *bona fide* intent to vest in her husband such title as she had to the property.    See *Nedby vs. Nedby*, 21 *L. J.* (*N. S.*) *Chancery*, 446, 448; *Grigby vs. Cox*, 1 *Ves.*, 517, 518; *Linnenkemper vs. Kempton*, 58 *Md.*, 159–166; *Griffin vs. Birkhead*, 84 *Va.*, 612; *Scarborough vs. Watkins and Wife*, 9 *B. Monroe*, 547.

As to the estate acquired by Mrs. Livingston under the deed to her:

The words employed in the deed, "for her sole and separate use," are technically the most apt and correct words to indicate that the estate granted is for her *exclusive use*, and that the husband's rights are entirely excluded.    *Bispham's Principles of Equity*, sec. 100, *page* 142; *Snell's Principles of Equity*, 426; 1 *Bishop on Married Women*, sec. 800; *Lippencott vs. Mitchell*, 4 *Otto*, (94 *U. S.*,) 768; *Morrison vs. Thistle*, 67 *Mo.*, 597, 600.

This deed to her was altogether sufficient to create in her an equitable separate estate in this property, and is without any limitation or restriction on her right to dispose of the same.

The English Courts have for many years adhered to the rule "that she is deemed to be a *féme sole* as to her separate estate, and unless restrained by the instrument creating it, she may dispose of and convey it to whom she pleases, without the consent or concurrence of her husband.    *Hulme vs. Tenant*, 1 *Leading Cases in Eq.*, *part* 2, *page* 686, (*marg.* 490), 687 (*marg.* 491), 690 (*marg.* 494); *Taylor vs. Meads*, 34 *Law Jur.* (*N. S.*), *Chan.*, 203, 206, (4 *DeG.*, *J. & S.*, 597); *Hall vs. Waterhouse*, 5 *Gifford's Chy. R.*, 64–68.    [*See notes in 4th Vol. Am. Law Register*, (*N. S.*, 1864), 754, 762, *on this case.*]

She may give the same interest and estate to her husband which she could give to any other person.    *Hulme vs. Tenant*, 1 *vol.*, *Part* 2, *Leading Cases in Equity*, 690; *Essex vs. Atkins*, 14 *Ves.*, 542; *Grigby vs. Cox*, 1 *Ves.*, 518; *Nedby vs. Nedby*, *supra*; 2 *Story's Equity Jurisp.*, secs

1395–1396; *Dallam vs. Wampole, et al.,* 1 *Peters' Cir. Ct.,* 116, 117; *Savage vs. Savage,* 80 *Me.,* 472.

As to her general powers over her equitable separate estate, see also: 1 *Bishop on Married Women,* sec. 853; 2 *Bishop on Married Women,* secs. 163, 190, 376; *Hill on Trustees,* 629, (*marg.* 420), 658, (*marg.* 424); *Wells on Separate Estates of Married Women,* sec. 5, *pages* 79, 80; secs. 70, 71, 72, *pages* 134, 135, 136; *Stewart on Hus. and Wife,* secs. 42–203, 216.

Chancellor KENT, in *The M. E. Church vs. Jacques,* 3 *John. Ch.,* 78, reviewed the English cases and held that the wife, as to her equitable separate estate, was not a *féme sole* to all intents and purposes; but only *sub modo,* to the extent of the powers clearly granted to her. On appeal this case was reversed by the Court of Errors, which held that the wife is to be regarded as a *féme sole* as to her rights to contract for and dispose of her separate estate. *Jacques vs. M. E. Church,* 17 *Johnson,* 548, 578, 579, 585.

This question was first considered in this Court in *Cooke vs. Husbands,* 11 *Md.,* 492, 503 and 506, and after a full and careful review of the English cases and Chancellor KENT's modification of the rule, this Court adopted the English rule, holding that a *féme covert,* may act in reference to her separate estate as a *féme sole* where there was no limitation or restriction in the deed, and recognized the principle that *jus disponendi* accompanies the property, unless restrained in terms or by the manifest intention of the instrument creating the separate estate. This case, which has become a leading case on this subject, has been cited by this Court with approbation in a large number of cases. See *Michael vs. Baker, Ex'x, &c.,* 12 *Md.,* 169; *Chew's Adm'rs vs. Beall,* 13 *Md.,* 360; *Koontz vs. Nabb,* 16 *Md.,* 555; *Buchanan vs. Turner,* 26 *Md.,* 1; *Shull vs. Murray, Ex'r* 32 *Md.,* 15; *Cooney, Adm'r vs. Woodburn, Adm'r,* 33 *Md.,* 320.

In *Preston, Trustee vs. Fryer, et al.*, 38 *Md.*, 221, this Court held that the deed from the wife to her husband was void, as the property had not been conveyed to her for her separate use.

In *Gebb vs. Rose, et al.*, 40 *Md.*, 387, 393, the wife's deed to her husband, of her general property, was declared to be void—the Court, in its opinion, saying that "the only way by which she could convey to her husband, property not held to her separate use, is by the intervention of a third party as grantee."

In the case of *Armstrong & Snowden, Adm'rs vs. Kerns, et al.*, 61 *Md.*, 364–367, the grant was to the wife generally, but with full power to mortgage or dispose of the property; and her mortgage of the property, without her husband joining, was declared to be valid and binding. This Court said that where she acquired property, not to her separate use, and without any special power of disposition, the statute applied; but where the property was settled to her separate use, and no specific mode of disposition is prescribed, and there is no restriction or limitation on her disposition, she may act in reference to its disposition as a *féme sole*.

*John Hinkley, Archibald H. Taylor*, and *\*Edward Otis Hinkley*, for the appellees.

It is well settled that a married woman cannot convey what has been called a "*statutory separate estate*," (that is, property conveyed to her after 1860, without the use of the words "sole and separate estate,") without her husband's joining in the deed; Code, Art. 45, sec. 2; and a deed of it without his joining is void, if made to a stranger. *Greenholtz vs. Haeffer*, 53 *Md.*, 184; or to her husband. *Gebb vs. Rose, et al.*, 40 *Md.*, 392; *Preston, Trustee vs. Fryer, et al.*, 37 *Md.*, 221.

We concede that a married woman in execution of a power *expressly given* may convey as a *féme sole*. *Arm-*

*\*Present, but did not take part in the argument.

Livingston, *et al. vs.* Hall, *et al.*

*strong & Snowden, Adm'rs vs. Kerns, et al.,* 61 *Md.,* 364; *Greenholtz vs. Haeffer,* 53 *Md.,* 184.

But the deed in this case to Mrs. Livingston, gave her no power of disposition whatever, though erroneously so stated in the bill. There is nothing there but the words, "for her sole and separate use."

We do not concede that before the Code a married woman could convey her sole and separate estate in the absence of a power without her husband's joining. This point rests entirely on a dictum in *Cooke vs. Husbands,* 11 *Md.,* 492, *at* 506; but in that case there was a particular mode of disposition provided, and the language used in that case is criticised in *Koontz vs. Nabb,* 16 *Md.,* 555.

The Code, Art. 45, secs. 1 and 2, provides that all the property acquired by a married woman shall he held as her separate estate, and can be conveyed by joint deed with her husband. There is no reason for a distinction since the Code, between this so-called "statutory separate estate," and a "sole and separate estate" arising by the use of these exact words in a conveyance to the wife.

The separate estate existed before the Code, when specially created, and the obvious intention of the Code was to provide that all the property acquired by a married woman, "she shall hold for her separate use," and to provide that "she may convey the same by a joint deed with her husband." There is no reservation made or implied that the use of the words "sole and separate" shall give her any different kind of estate or the power of disposition without her husband's joining, and there has been no decision since the Code to authorize any such distinction. On the contrary this Court has stated clearly that "in the adoption of the provision of the Code, the separate estate, which before that time was the mere creature of a Court of equity and not recog-

nized at law, was made a legal limitation and estate;'' and that ''the right and power of disposition, other than by way of devise, was from that time required to be exercised with the concurrence of her husband.'' *Hall & Hume vs. Eccleston, et al.,* 37 *Md.,* 519; *Greenholtz vs. Haefer,* 53 *Md.,* 186.

A husband cannot acquire property directly from his wife at all. There can be no contract between them for that purpose. The facts in this case, present this matter in its strongest aspect. The conveyance from Mrs. Livingston to her husband was without valuable consideration, and both of them being dead, the deed, if held good, would give her property to *his* children, and would exclude Mr. Hall and Mrs. Howard, *her* children by her former marriage. *Helms vs. Franciscus,* 2 *Bland,* 561; *Gebb vs. Rose, et al.,* 40 *Md.,* 392; *Preston, Trustee vs. Fryer, et al.,* 37 *Md.,* 221.

The deed being void, cannot be enforced in equity as a contract, which would simply make the statute nugatory. *Gebb vs. Rose, et al.,* 40 *Md.,* 392; *Greenholtz vs. Haeffer,* 53 *Md.,* 186; *Grove vs. Todd,* 41 *Md.,* 633, at 640.

ALVEY, C. J., delivered the opinion of the Court.

The decree in this case was entered *pro forma,* and seems to have been passed in pursuance of an agreement of counsel prescribing special terms for the hearing of the case on appeal, and for the award of costs by the Court. Of course, such an agreement can have no effect here; as this case must be heard and disposed of as all other cases are heard and disposed of by this Court,— that is, according to the Constitution and laws of the State.

The bill does not profess to be filed under the recent provision of the Code for obtaining declaratory decrees, (Code, Art. 16, secs. 26, 27,) whereby the Court is empowered, in its discretion, to make a declaration that the

Livingston, *et al. vs.* Hall, *et al.*

party is entitled as claimed by him, without any further or other relief being asked or given.   But the bill was intended to invoke the exercise of the ordinary and long established jurisdiction of the Court for the quieting of titles, and the removing of clouds therefrom, existing to the prejudice of the party complaining.

According to the allegations of the bill, William Livingston, the original complainant in this case, married Mrs. Margaret Hall, a widow, with two infant children by her first husband, and by the plaintiff she had four other children; all of whom survived her, and were of age at the time of her death in 1888.   In June, 1865, Mrs. Livingston, the wife of the original plaintiff, acquired by purchase a certain lot or piece of ground in fee, in the City of Baltimore, which was deeded to her for her sole and separate use; and in the deed it is recited, that the consideration for said deed to her was paid "out of her own separate money and estate."   In July, 1866, the wife, the grantee in the deed, executed a deed to her husband, the original plaintiff, for the lot of ground so acquired by the wife; this latter deed reciting the consideration as being natural love and affection, and one dollar.   The deed to the husband granted the property to him, his heirs and assigns.

The bill then charges that this deed to the husband, made by the wife alone, was duly made by virtue of the power of disposition incident to the separate estate of the wife, and that the deed to the husband "vested in him a clear legal title in fee to said lot of ground." And it is then charged "that *doubts have been raised as to the validity of the plaintiff's title,* and the sufficiency of the wife's deed to him, to pass the title of said lot of ground, and by reason of such doubts the plaintiff is unable to sell or dispose of said lot of ground;" and the plaintiff therefore prays "that his title in fee to said lot of ground may be established and confirmed, and

that the said *doubts and clouds as to the validity of such title may be removed* by the decree of the Court;" and for general relief.

As will be observed, there is no allegation that the plaintiff was in the possession of the property, or that he had been, or was about to be, disturbed in his right of possession, or that his title had been, or was threatened to be, called in question by any adverse claimant. The only allegation in respect to a cloud upon the title is, that doubts have been raised as to the validity of the title; but by whom, or in what manner, such doubts have been raised, the bill does not allege.

The two children of Mrs. Livingston by her first husband, by their answer, admit the acquisition of the property by their mother, and the making the deed therefor to her husband, as alleged in the bill. But they deny that their mother had any power to make such deed; and· they aver that they are advised, and therefore insist, that the paper purporting to be the deed made by their mother to her husband is absolutely null and void, and conveyed no title whatever; and that, by the death of their mother, the title to the property devolved upon her six children as her heirs-at-law. The other children admit the facts alleged in the bill, but not the legal conclusion alleged as deducible therefrom, and they submit the question of their rights to the Court.

During the pendency of the suit and before decree passed, William Livingston, the original plaintiff, died, leaving a will, whereby, according to the allegations of a petition filed, he devised the property conveyed to him by his wife, to two of his children, namely, George F. Livingston and Margaret E. Dewald, for life, with remainders over. But the will is not produced, nor is there any allegation that it has been admitted to probate; the allegation in regard thereto being simply that it had been deposited with the Register of Wills, and

therefore could not be produced without the order of the Court. Nor is it alleged or shown who are the parties entitled in remainder. The alleged devisees for life, however, upon their own suggestion, were admitted as plaintiffs and authorized to prosecute the suit.

There was no testimony taken, but the case was submitted to the Court on the bill, the two deeds as exhibits, the answers and replication thereto. The decree that was passed dismissed the bill.

It is said that a bill *quia timet*, or to remove a cloud upon the title of real estate, differs from a bill of peace in that it does not seek so much to put an end to vexatious litigation respecting the property, as to prevent future litigation by *removing existing causes of controversy as to its title.* It is brought in view of anticipated wrongs or mischiefs, and the jurisdiction of the Court is invoked because the party fears future injury to his rights and interests. 2 *Sto. Eq., sec.* 826. But to maintain a suit of this character it is, as a general rule, necessary that the plaintiff shall be in the possession of the property, and, except where the defendants are numerous, that his title, if a legal one, shall have been established at law, or be founded on undisputed evidence or long continued possession. *Holland vs. Challen,* 110 *U. S.,* 15, 20, and cases there cited.

In the case of *Orton vs. Smith,* 18 *How.,* 263, it was laid down as a settled rule, that those only who have *a clear, legal and equitable,* title to land, *connected with possession,* have a right to claim the interference of a Court of equity, to give them peace or dissipate a cloud on the title. The principle thus formulated has been sanctioned and followed in several cases in this Court, and is therefore the established law upon the subject. *Crook & Wife vs. Brown, et al.,* 11 *Md.,* 158, 173; *Polk vs. Pendleton,* 31 *Md.,* 118; *McCoy vs. Johnson, et al.,* 70 *Md.,* 490.

Here, as before stated, it is not shown that the former plaintiff was in possession of the property at the time

of the institution of the suit, nor is it shown that the present plaintiffs, as devisees, are in possession. Possession, in this class of cases, is not a fact to be presumed, but must be affirmatively alleged and shown. Moreover, on the naked presentation of the case, as we have it on the record before us, even assuming that the wife had the *jus disponendi* of the property by deed, without the joinder of her husband, the title asserted by the bill is not of that clear, legal and equitable nature, such as will justify the Court in affirming it to have passed to and vested in the husband, in the absence of all evidence to show the circumstances under which the deed was made. The deed to the husband professes to have been made in consideration of natural love and affection, and is therefore a voluntary conveyance from the wife. Such transfers from the wife to the husband are always subjects of rigid scrutiny. A voluntary contract or agreement, that is, without valuable consideration, as between husband and wife, a Court of equity will never enforce; but where such agreements have been consummated a Court of equity will uphold them and give them effect, provided they have been in all respects just and fair, and not to the prejudice of creditors. *Reade vs. Livingston*, 3 *John. Ch.*, 481; *Hendricks vs. Isaacs*, 117 *N. Y.*, 411. But a voluntary deed from a wife to her husband, made when she is surrounded by her infant children, and without provision for them, requires the strictest investigation and scrutiny, before a Court of equity will give it support.

In 2 *vol. Story's Eq. Jur.*, sec. 1395, in treating of the separate property of married women, and the manner in which such property is guarded and protected by a Court of equity, the author says: "A married woman having this general power of disposing of her separate property, the question naturally arises, whether she may bestow it by appointment or otherwise, upon her husband; or

whether the legal disability attaches to such a transaction. Upon this subject the doctrine is .now firmly established in equity, that she may bestow her separate property by appointment, or otherwise, upon her husband, as well as upon a stranger. But, at the same time, Courts of equity examine every such transaction between husband and wife, with an anxious watchfulness, and caution, and dread of undue influence; and if they are required to give sanction or effect to it, they will examine the wife in Court, and adopt other precautions to ascertain her unbiased will and wishes;'' and many authorities are cited in support of the doctrine thus stated. And it has been held by Courts of high authority, and upon full and careful consideration, that a gratuitous conveyance by a wife of her property to her husband will be held void, unless it affirmatively appears from the attending circumstances, or otherwise, that it was her voluntary act, free from any undue influence exercised by the husband. *Boyd vs. De la Montagnie,* 73 *N. Y.,* 502; *Darlington's Appeal,* 86 *Penn. St.,* 512. See, also, *Lowry vs. Tiernan and Williamson,* 2 *H. & G.,* 40.

Now, upon the case as presented, it is very clear, that, though we might be of opinion that it was competent to the wife, under proper circumstances, to make the deed and transfer her separate estate to her husband, yet, upon the defective allegations of the bill, and in the absence of the facts attending the making of the deed to the husband, in view of the well established principles upon this subject, this Court ought not to affirm the validity of the deed, and thus preclude and estop the heirs of the wife from ever making further question of its validity. *Orton vs. Smith,* 18 *How.,* 265. The Court below, by its decree, dismissed the bill, and this Court for the reasons we have assigned, will affirm that decree, with costs to the appellees; but without prejudice to any

right or title that the husband may have taken under the deed from his wife.

*Decree affirmed, with costs.*

