FANT *v.* DUFFY ET VIR

[No. 44, September Term, 1963.]

*Decided October 15, 1963.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott, Marbury and Sybert, JJ.

*Raymond Godbersen,* for appellant.

No brief and no appearance for appellees.

Brune, C. J., delivered the opinion of the Court.

The appellant, George N. Fant, filed a bill of complaint against his former wife and her present husband (a) to set aside two deeds by which, through a straw party transaction, title to certain property in Hyattsville was transferred from the husband and wife as tenants by the entireties to the wife alone, or (b) in the alternative, to impress a constructive trust in his favor upon this property. The Circuit Court for Prince George's County granted the motion to dismiss submitted by the defendants-appellees at the conclusion of the plaintiff's case (Md. Rule 535), and entered a decree dismissing the bill. The plaintiff appeals.

The appellant and his former wife were married in 1942, and had three children, all daughters. The appellant's mother died (at some date not shown) and devised to him a piece of real

property. He sold that property and invested the proceeds in a second piece of real estate, title to which was apparently conveyed to the appellant and his wife as tenants by the entireties.[1] This second property was sold and in 1954 the Hyattsville property here involved was purchased at the price of $15,500 and title thereto was conveyed to the appellant and his then wife as tenants by the entireties. $8,500 of the purchase price was derived from the sale of the second property referred to above, and the balance of $7,000 was obtained through (or secured by) a mortgage or deed of trust, presumably executed by both parties.

On February 28, 1957, the appellant was arrested on a charge of incest with his eldest daughter. He and his wife and their three children were living together in the Hyattsville home, and at that time his wife stood by him. Counsel (not the appellant's present counsel) was employed to represent the appellant in connection with the criminal proceedings, and the same lawyer later prepared the separation agreement referred to below, and also represented him in the subsequent divorce proceedings. The appellant's present counsel informs us that the criminal case was not brought to trial, and the record shows that the appellant received treatment from a psychiatrist.[2] The appellant's testimony shows that it was a condition to his eldest daughter's being released from a "reception home" and being allowed to return to the Hyattsville home that the appellant should leave the family home. This apparently occurred at about the time of the execution of the separation agreement dated July 16, 1957, between the appellant and his then wife.

In April, 1957, the appellant was very much afraid that he would be imprisoned on the criminal charge then pending against him. He then arranged, after consultation with his wife, for the execution of the deeds which he now seeks to set aside.

---

1. Testimony of the wife relating to the second property given in the divorce suit is included in the record in this case, but not all of it was actually read in evidence in this case. A part not so read shows that title to the second property was taken in the names of both husband and wife. We do not find it contradicted.

2. There are indications in the record, but there is no direct proof, that the appellant was indicted on April 12, 1957, on sexual charges and that a stet was entered in that case on May 29, 1957.

The deed from husband and wife to the straw party was executed by the grantors at the office of a title company on April 8, 1957, and the deed from the straw party to the wife was also executed at the same place and on the same date. Both deeds were recorded on April 10, 1957.

The appellant rests his argument in this Court on the doctrine of confidential relations. He cites several cases dealing with the general doctrine, but does not cite one case dealing with it where a transaction between husband and wife was involved. The appellee has filed no brief and has submitted no argument. (The exact extent of the interest claimed by the appellant is not wholly clear, but in the view which we take of the case this need not be determined.)

Questions similar to those raised in this case have been presented in a number of cases decided by this Court. Many of them have involved the converse of the situation in the present case in that the transaction under attack was a transfer by the wife to the husband.

In *Tillinghast v. Lamp,* 168 Md. 34, 176 A. 629, one controversy was with regard to the ownership of funds deposited in the wife's checking and savings accounts in a bank, which were transferred from accounts in her name to joint accounts in trust for herself and her husband. These transfers were made with the aid of the husband, if not at his direction. The trial court upheld them, and this Court affirmed the decree. Judge Offutt stated for this Court (168 Md. at 47) : "With that background, under the conventional doctrine of confidential relations, the burden would have been upon the husband to show that the gift was with the free consent of the donor, that the transaction was fair, that there had been no abuse of the confidence, and that the gift was the 'pure, voluntary and well understood act of the other' * * *." He then cited authority that because every fiduciary relation implies a condition of superiority held by one party over the other, in every transaction where the superior party obtains a possible benefit, equity raises a presumption against its validity and imposes upon the superior party the burden of proving affirmatively compliance with equitable requisites in order to overcome the presumption. The appellee husband in the *Tillinghast* case contended that the doctrine of con-

fidential relations did not apply to such transactions as were there involved between husband and wife. He cited several cases in support of his contention, among them *Hillwood v. Hillwood,* 159 Md. 167, 150 A. 286. This contention was not accepted, but a rule somewhat less sweeping than the conventional burden of proof rule prevailing in confidential relations cases was stated and applied.

Judge Offutt stated (168 Md. at 48) that an examination of the cases cited by the appellee husband showed that although they did not "deal with the question of the burden of proof or with confidential relations by name, nevertheless they [did] leave an implication contrary to the weight of authority elsewhere, that the marital status is not in itself sufficient to establish a confidential relationship." He then continued:

> "But in the latest expression of this court, the rule recognized in this state, relating to transfers of property from a wife to her husband, is as stated in *Hillwood v. Hillwood, supra,* that: 'The law on this subject is familiar. It is that a wife may dispose of her property by gift to her husband as fully and effectually as if the transaction were between persons not occupying that relation, but, because of the natural dominance of the husband and the trust and confidence commonly incident to their union, the gift will be closely, carefully, and vigorously investigated in a court of equity, and be annulled if obtained by fraud, coercion, misrepresentation, or undue influence. *Tyson v. Tyson,* 54 Md. 35, 38-40; *Livingston v. Hall,* 73 Md. 386, 21 A. 49; *Reed v. Reed,* 109 Md. 690, 72 A. 414.' "

The rule above quoted falls short of the conventional confidential relations rule in that it does not impose the burden of proof of fairness upon the dominant (or supposedly dominant) party.

However, since the decision of *Tillinghast v. Lamp, supra,* there has been some tendency in cases involving transactions between husband and wife to examine the facts to determine whether or not there are facts in addition to the marital rela-

tion itself which would indicate the existence of a confidential relationship in which one spouse was the dominant party. If such a situation is found to exist, and if the transfer is to the dominant party, then the usual rule of confidential relations imposing the burden of proving fairness upon the dominant party appears, under the more recent cases, to be applicable.

*Beard v. Beard,* 185 Md. 178, 44 A. 2d 469, illustrates this tendency. There this Court cited and followed *Tillinghast v. Lamp, supra,* and the cases therein cited, in holding the wife entitled to the repayment of funds which she had turned over to her husband for use in his business. The opinion, written by Judge Markell, was careful, however, to point out (185 Md. at 187) that the *Tillinghast* case had held that "the marital status is not *in itself* sufficient to establish a confidential relationship" (168 Md. at 48, italics supplied by Judge Markell's opinion) and that in *Tillinghast v. Lamp,* the court "did not say that a confidential relationship could not be established between husband and wife by additional facts in conjunction with the marital status."

In *Owings v. Currier,* 186 Md. 590, 47 A. 2d 743, the husband sought to set aside two separation agreements which he had made with his wife and to claim, after her death, his statutory right as a surviving spouse to certain real estate conveyed by her during her lifetime to the defendants, who were daughters of his wife by her first marriage. This Court affirmed a decree dismissing the husband's bill. The Court cited *Tillinghast* and *Beard,* but it also cited 2 Restatement, *Contracts,* § 497, which states in part, in discussing the usual cases of confidential relations, among them those involving husband and wife, that "[i]n each of these cases, however, it is a question of fact whether the relationship in a particular case is such as to give one party dominance over the other, or put him in a position where words of persuasion have undue weight." The Court also cited to like effect *Williston on Contracts,* Rev. Ed., § 1625 A. At p. 603 of 186 Md., Chief Judge Marbury, speaking for this Court, said: "We conclude that there is no presumption against the validity of the agreements before us, and that the burden of proof was upon the appellant [husband] to show that the wife was the dominant party in the marriage, and that

appellant was improperly influenced and coerced into making the agreement. That burden he has not sustained."

In *Manos v. Papachrist,* 199 Md. 257, 86 A. 2d 474, one of the issues between the administratrix *pendente lite* of the estate of a wife and the surviving husband was the validity of transfers to the husband of bank accounts and of title to an automobile purportedly effected by documents signed by the wife at the husband's request or direction about nine days before her death. This Court reversed the decree of the trial court insofar as it upheld these transfers. In the opinion, written by Judge Delaplaine, the usual rule applicable to transfers to the dominant party in a confidential relationship by the other party thereto was stated. (199 Md. at 261.) The Court next stated that ordinarily the relationship of husband and wife was a confidential one, and that "in any given case it is a question of fact whether the marital relationship is such as to give the husband dominance over his wife or to put him in a position where words of persuasion have undue weight." Judge Delaplaine then continued:

> "Generally, however, on account of the natural dominance of the husband over the wife, and the confidence and trust usually incident to their marriage, a court of equity will investigate a gift from a wife to her husband with utmost care, especially where it strips her of all her property; and the burden of proof is on the husband to show that there was no abuse of confidence, but that the gift was fair in all respects, was fully understood, and was not induced by fraud or undue influence."

In support of this statement the opinion cites *Livingston v. Hall,* 73 Md. 386, 397, 21 A. 49; *Hillwood v. Hillwood, Tillinghast v. Lamp,* and *Beard v. Beard,* all cited above; *Cook v. Hollyday,* 185 Md. 656, 668, 45 A. 2d 761; and *Owings v. Currier, supra.* Of these cases, *Cook v. Hollyday,* we note, involved a transaction between attorney and client, not a transaction between husband and wife, and *Livingston v. Hall* was among the cases cited in both *Hillwood* and *Tillinghast.* None

of the others, we think, purports to overrule *Tillinghast v. Lamp,* which is, indeed, one of the cases cited, nor does *Manos v. Papachrist* itself undertake to do so. We think that the concluding clause of the above statement should be read in the light of the explanation and limitation of *Tillinghast* given in *Beard* and in the light of the facts of *Manos,* which clearly showed domination of the wife by the husband. In view of those facts, the actual result in *Manos* is harmonious with *Beard* and with *Tillinghast* as explained in *Beard,* as well as with the result and reasoning of *Owings v. Currier, supra.* It is not, we think, to be supposed that *Manos* overruled *Tillinghast sub silentio* while citing it as supporting the opinion in *Manos.*

It would seem that the limitation on the doctrine of confidential relations recognized in *Tillinghast v. Lamp, supra,* grew out of such cases as *Hillwood v. Hillwood, supra,* and *Reed v. Reed,* 109 Md. 690, 72 A. 414, which hold that a wife may validly transfer property of her own to her husband during marriage, but that such a transaction will be closely scrutinized by a court of equity. Indeed, the rule as stated in *Tillinghast* is quoted directly from *Hillwood* and it omits the requirement of the ordinary rule applicable to confidential relationships that the dominant party must prove the fairness and voluntariness of the transaction by which the other party transferred property to him.

Most of the cases involving transactions between husband and wife in which the doctrine of confidential relations has been sought to be invoked have involved transfers from the wife to the husband and the usual presumption, as *Tillinghast* and *Manos* point out, is that the husband is the dominant party. The possibility that the situation may be reversed is, however, clearly recognized in *Owings v. Currier, supra.* Where the usual presumption is not overcome—and we think it was not overcome in the instant case — there is another presumption which may be applicable to relieve the wife of any burden of going forward with proof of fairness. This is the presumption that a transfer from a husband to his wife is intended to be a gift. See *Mutual Insurance Co. v. Deale,* 18 Md. 26; *Porter v. Porter,* 168 Md. 287, 177 A. 460. See also *Mountford v. Mountford,* 181 Md. 212, 29 A. 2d 258.

The controlling fact here, we think, is simply that no dominance on the part of the wife has been shown. The trial judge found, and we think there was ample evidence to support his conclusion, that there no fraud, mistake, duress, or undue influence was shown. The appellant ex-husband's testimony shows that he was frightened by the possibility of his being imprisoned and it also shows a desire to make amends. It likewise shows that he talked the matter over with his wife, but it shows that he initiated and directed the actual transfer of title to her. If we assume that the usual presumed dominance of the husband might have been overcome by evidence, and that the wife might have been shown to have been the dominant party, we think that the evidence fails to show it. Hence there is no foundation for invoking the doctrine of confidential relations and for requiring the appellee ex-wife to assume the burden of proving the fairness of the transaction. The bill was properly dismissed under the *Tillinghast, Beard* and *Owings* cases, the latter of which seems controlling here.

We may add that not only does the evidence fail to support the appellant's effort to invoke the doctrine of confidential relations, but it gives rise to a strong inference that he intended the transfer to his wife to be a gift. The separation and property agreement was drafted by his counsel and was executed about three months after the property had been transferred to the wife. Though the fact of that transfer must have been clearly in his mind, the agreement makes no reference at all to the property which he now seeks to reach. We find nothing in any of the ex-wife's statements, nor in his statement as quoted by her, to the effect that it would be better for the house and better for the children that title to the house be transferred to her, which would negate or limit her ownership of the property or would suggest a conditional transfer of it to her or any trust, actual or constructive, in favor of the appellant in the property.

*Decree affirmed; the appellant to pay the costs.*