MANOS, ADMINISTRATRIX *v.* PAPACHRIST
PAPACHRIST *v.* MANOS, ADMINISTRATRIX
(Two Appeals In One Record)

[No. 89, October Term, 1951.]

*Decided February 8, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*J. Wilmer Cronin* for appellant.

*A. Freeborn Brown,* with whom was *Howard S. O'Neill,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Alexandria Manos, administratrix *pendente lite* of the estate of Christina Papachrist, deceased, brought this suit in the Circuit Court for Harford County to annul certain instruments which she executed for her husband, James Papachrist, shortly before her death.

Alexandria Manos and Christina Papachrist were sisters, born in Ohio and taken to Greece before they were five years old. In 1936 Alexandria, then 18, returned to the United States and became a resident of Nyack, New York. Several years later Christina returned to this country and lived with her sister. In 1940 Christina married defendant, who was born in Greece, immigrated to America, and became a naturalized American citizen. Defendant opened a restaurant in New Jersey but was unsuccessful, and in September, 1941, the couple moved from New Jersey to Maryland.

On November 27, 1941, after defendant had worked in Bel Air for several months as a cook in a restaurant, his wife entered into a partnership with three men to operate the recreation center, including a restaurant, soda fountain and bowling alley, in Bel Air and also a restaurant in Aberdeen. The partnership agreement provided that each partner should receive $35 per week as salary, and at the end of each month any profits were to be divided equally among the four partners. The agreement designated defendant as manager for his wife's interest in the business.

From 1941 to 1944 Mrs. Papachrist worked part of the time at the recreation center, but early in 1944 she

was stricken with tuberculosis, and in March, 1944, she entered Eudowood Sanitarium at Towson. In December, 1944, she was taken to Gabriels Sanitarium, north of Saranac Lake, New York. In the Spring of 1945 defendant stayed with his wife at the sanitarium for about a month. On May 14 he phoned to complainant's husband, William Manos, who was then in Bel Air, that Mrs. Papachrist had suffered a hemorrhage, and urged him to come to the sanitarium. Manos made some funeral arrangements in Nyack, and then continued on to the sanitarium, arriving there early on the morning of May 15.

Defendant then went back to Bel Air, where he conferred with his attorney, informing him that his wife was desperately ill and asking him to prepare papers for his wife to sign to give everything she had to him. The partnership business had been successful, and Mrs. Papachrist had saved about $10,000, which had been deposited in the Commercial and Savings Bank in Bel Air. The attorney hastily drew a will and an assignment of her interest in the business. He also obtained a card at the bank for the purpose of transferring the checking and savings accounts. He also suggested that the title to the automobile should be signed and acknowledged before a notary public.

On May 17 defendant again left for Gabriels, arriving there at 7 o'clock the next morning. He reached his wife's bedside before 8 o'clock and handed her the papers, which she could not read, as she could not read anything except Greek. Nevertheless, she immediately signed them. Two nurses witnessed the will, and one of them witnessed the assignment. Defendant took the assignment to a notary public for her signature. About 8 o'clock Manos entered the bedroom. He expressed surprise upon seeing defendant, as he did not expect him until the next day. Defendant hurried off to catch a train, and Manos walked with him to the station. While they were waiting for the train, defendant showed Manos the assignment.

Manos told defendant that he intended to go home by bus later that day. But he remained that night at the sanitarium, and on the following day he went back to see Mrs. Papachrist. He testified that when he entered her room, she was writing her will in Greek, and that when he called in two employees at the sanitarium to serve as witnesses, she was ready to sign her name. This will, which was executed May 19, 1945, left $8,000 to Mrs. Manos and $2,000 to a nephew, and contained the following statement: "I annul the previously signed by me documents, because I was forced on the 18th of May, 1945, because they did not read them to me and I do not know what documents they were. These that I write, I write without being forced and of my own will."

Mrs. Papachrist died on May 27, 1945. A caveat was filed to her last will, and the Orphans' Court of Harford County appointed Mrs. Manos administratrix *pendente lite* of her sister's estate.

The chancellor held that Mrs. Papachrist was mentally competent to execute the instruments, and not subjected to fraud or undue influence, but that the paper attempting to assign the interest in the business was invalid because it did not contain the name of any assignee. He accordingly entered a decree declaring: (1) that the transfer of the bank accounts and the automobile were valid, and (2) that the assignment of the interest in the business was invalid. Complainant appealed from the first part of the decree, and defendant appealed from the second part.

It is an accepted principle of equity that where there is a fiduciary or confidential relation between two parties wherein trust and confidence are reposed on one side and influence and control are exercised on the other, it is the duty of the dominant party to exercise the utmost good faith in any transaction with the confiding party, and if he fails to show this, the transaction will be declared void. *Williams v. Robinson,* 183 Md. 117, 36 A. 2d 547; *Grimes v. Grimes,* 184 Md. 59, 40 A. 2d 58; *Lynn v. Magness,* 191 Md. 674, 684, 62 A. 2d 604.

Ordinarily the relationship of husband and wife is a confidential one. Of course, in any given case it is a question of fact whether the marital relationship is such as to give the husband dominance over his wife or to put him in a position where words of persuasion have undue weight. Generally, however, on account of the natural dominance of the husband over the wife, and the confidence and trust usually incident to their marriage, a court of equity will investigate a gift from a wife to her husband with utmost care, especially where it strips her of all her property; and the burden of proof is on the husband to show that there was no abuse of confidence, but that the gift was fair in all respects, was fully understood, and was not induced by fraud or undue influence. *Livingston v. Hall,* 73 Md. 386, 397, 21 A. 49; *Hillwood v. Hillwood,* 159 Md. 167, 150 A. 286; *Tillinghast v. Lamp,* 168 Md. 34, 48, 176 A. 629; *Beard v. Beard,* 185 Md. 178, 187, 44 A. 2d 469; *Cook v. Hollyday,* 185 Md. 656, 668, 45 A. 2d 761; *Owings v. Currier,* 186 Md. 590, 596, 47 A. 2d 743.

We accept the rule that where a wife is under the dominance of her husband, or by virtue of the relation between them is justified in assuming that he will not act in a manner inconsistent with her welfare, a gift induced by the husband's unfair persuasion is induced by undue influence and is consequently voidable. Duress between husband and wife has the same effect as between other parties, but unfair persuasion without fear is enough to constitute undue influence. Moreover, the weakness or dependence of the wife is a strong circumstance tending to show that the persuasion may have been unfair. *2 Restatement, Contracts,* sec. 497.

We have here a clear case of confidential relationship. The husband was strong, aggressive and dominating. The wife, who had been suffering for more than a year with tuberculosis, was ill and helpless when she was asked to sign the papers. She could not read them, because they were written in English. Withing a few minutes she signed all of the papers stripping herself

of her property, and there is no convincing evidence that she understood them. Her brother-in-law, who was nearby at the time, could read both English and Greek, but defendant succeeded in having the papers signed before he entered the bedroom. So hastily were they executed that the will was not dated, the assignment of the interest in the business did not contain the name of any assignee, and the bank card was neither filled in nor witnessed. The title to the automobile was taken to a notary public, who falsely certified that the assignment was executed in her presence, in spite of the fact that she had never seen Mrs. Papachrist's signature. Defendant then hurried away to catch a train for home to claim all of his wife's property. Furthermore, it is significant that on the following day the wife wrote in Greek and signed another will, in which she avowed that she had no knowledge of the contents of the instruments which she had signed. For these reasons we are of the opinion that defendant failed to meet the burden of proof, and therefore the instruments must be declared void.

Another argument made by defendant was that, even though the instruments should be annulled, the Court should declare the property to belong to him on the theory that his wife had held it in trust for him. He argued that, while she had worked at the soda fountain only a short time, he had done most of the work connected with the business. We cannot ignore the fact, however, that defendant admitted that when he came to Maryland in 1941, he had no money, but left debts in New Jersey amounting to over $500; and that it was his wife this time who took the risk of entering the business with the aid of a loan of $1,500 from her cousin in Washington. Defendant said that he had urged his wife to be one of the partners in the business "for personal reasons." The couple owned a house as tenants by the entireties, but by the partnership agreement the wife took the hazard of the business venture and in return was to receive any profits from the business, whereas

the husband was to be paid a salary. Even after the business turned out to be successful, the husband made no effort to claim his wife's money or other property until a few days before her death. Under these circumstances, the equity court would not be justified in ruling that, although the instruments in question are void, nevertheless the property belongs to the husband. We are strengthened in this view by the fact that he delayed in trying to get the property for more than a year while his wife was ill, and now her lips are sealed.

For these reasons we will reverse the first part of the decree declaring the assignments of the bank accounts and automobile title to be valid, and affirm the second part of the decree declaring the assignment of the interest in the business to be invalid.

> *Decree reversed in part and affirmed in part, and case remanded for the passage of a decree in accordance with this opinion, the costs to be paid out of the estate.*