GARRISON GRANT TRUPP, ETC., ET AL. *v.*
SUSAN C. WOLFF

[No. 466, September Term, 1974.]

*Decided February 19, 1975.*

The cause was argued before MENCHINE, MOORE, LOWE and MELVIN, JJ.

*I. Duke Avnet* and *Donald Needle*, with whom was *Johnson Bowie* on the brief, for appellants.

*Melvin J. Sykes*, with whom was *Max R. Israelson* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court. MENCHINE, J., dissents and filed a dissenting opinion at page 621 *infra*.

On October 21, 1968 Susan C. Wolff, the appellee, sought declaratory relief in the Circuit Court of Baltimore City. Mrs. Wolff, the only child of Florence Hendler Trupp, was born during Mrs. Trupp's first marriage. After the loss of

her first husband, Mrs. Trupp married Bernard L. Trupp, an advertising executive for an oil company, whose death on August 1, 1968 was the genesis of this action.

By deed of gift dated April 19, 1965 Mrs. Trupp gave to Mr. Trupp a somewhat diversified stock portfolio valued at three hundred twenty-four thousand dollars. The largest portion by far was stock of The Borden Company which she had inherited from her father, L. Manuel Hendler, who was previously the source of Mrs. Trupp's sustenance. The transfer to Bernard Trupp was conducted under the auspices of an attorney, Sidney Weiman.

Upon Mr. Trupp's death three years later, Mrs. Trupp realized that her husband had divided the stock among his six brothers using a "do it yourself" trust form from a book titled *How to Avoid Probate*.[1] She immediately advised her daughter that the gift to Mr. Trupp had not been outright, but rather was conditional. Although Mr. Trupp had the income and absolute control of the stock during his lifetime, he had it solely upon the condition, according to Mrs. Trupp, that he bequeath the corpus to Mrs. Trupp's daughter, Susan Wolff. When it became apparent that he had not done so, Mrs. Wolff promptly brought suit for declaratory and other relief in the Circuit Court of Baltimore City, naming as defendants Bernard Trupp's estate and his six brothers.

Partially as a result of preliminary, but crucial, pleading skirmishes the trial was not commenced until January 18, 1971. Nearly a month was consumed with the taking of testimony. For reasons not apparent from the record the opinion was not rendered until March 1st nor the decree filed until March 15th of 1974, over three years after the taking of testimony was concluded.[2] The essence of this long-awaited opinion was the imposition of a constructive trust upon the securities in favor of Susan Wolff.

Rather than synopsize over two thousand pages of testimony and describe in excess of one hundred exhibits, we

---

1. It is both unfortunate and ironic that Mr. Trupp's distrust of lawyers which led him to attempt this, promoted, if indeed it did not create, the litigation which has extended over 6 years.

2. Md. Rule 18 b.

will treat the testimony pertinent to each issue raised by appellants as we respond to these issues. We were mildly surprised at argument to hear appellants concede that all of these questions were evidentiary in nature. We were not so surprised to find that the simplicity of that shorthand characterization contrasted markedly with the issues' analytic complexity.

## Necessary Parties

The fulcrum upon which all other issues are balanced is whether Florence Trupp was a necessary party. Even that seemingly simple question was raised in an unusual manner. Rather than filing a plea in abatement or demurrer, appellants chose to petition the court to order that Florence Trupp be made a party plaintiff under Md. Rule 203 d alleging that she was the real party in interest. The strategy of this was apparent since Mrs. Trupp and the attorney Sidney Weiman were the only two living persons cognizant of the circumstances surrounding the transfer of the stock to Bernard Trupp. Thus if Florence Trupp were made a party plaintiff, the key to Susan Wolff's relief would be lost under the Dead Man's Statute, Md. Code, Art. 35, § 3, the substance of which is now Courts Art., § 9-116. That statute precludes testimony of a party regarding any transaction with or statement by a decedent "unless called to testify by the opposite party."

The chancellor ordered Florence Trupp to show cause why she should not be made a party plaintiff pursuant to the defendants' petition. Her response included the following disclaimer:

> "Further answering the motion, she says that she disclaims any interest in the controversy between plaintiff, Susan C. Wolff, and the defendants; that any right growing out of the contract referred to in the Bill of Complaint is a right of Susan C. Wolff; that Florence H. Trupp has no intention to pring and formally renounces any right to bring another action against the defendants for substantially

identical relief on the ground of breach of any agreement with the deceased; that having no interest in the outcome of this litigation, it would be burdensome and unfair to require her to be a party and to engage counsel."

Choosing to err, if at all, on the side of caution the chancellor declined to join Mrs. Trupp as a party plaintiff but elected to join her as a defendant, sua sponte.[3] Appellants contend that they were prejudiced by the chancellor's denial of their petition to make Mrs. Trupp a plaintiff, and even were that not so, his error in making her a defendant was prejudicial.

Appellants petitioned the trial court on the basis of Md. Rule 203 d which reads:

"Where it appears that the action has not originally been filed in the name of the real party in interest under section a, the court may, upon petition of a defendant, order the real party in interest to be made a party plaintiff."

In support of their argument, they allude to the mandatory language of 203 a.

"An action shall be prosecuted in the name of the real party in interest except as provided in section b."

Significantly, however, § b permits but does not require a person who contracts for the benefit of another to bring an

---

**3.** The order contained several conditions among which was:

"(3)  that this Order is without prejudice to the rights of any party to object to evidence of the said Florence H. Trupp; and any rulings as to the admissibility of her testimony, if offered by any party shall be made at the trial on the basis of the legal issues presented on the record at the time of said testimony; . . . ."

While its meaning escapes us, we note no issue is raised arguing that this condition somehow preserves the Dead Man's Statute preclusion of Mrs. Trupp's testimony.

action in his own name.[4] Decisional law now makes it equally clear that the beneficiary of a third party contract may likewise sue on his own behalf. *Spates v. Spates*, 267 Md. 72, 77.[5] In short, § b and our case law allow either or both the offeror and/or beneficiary to bring suit on the contract.

---

4. Md. Rule 203 b and (4)

"Any of the following persons may bring an action in his own name without joining with him the person for whose benefit the action is brought:

(4) a person with whom or in whose name a contract has been made for the benefit of another; . . . ."

5. We have come nearly full circle in our concept of who may sue on a third party beneficiary contract. At common law privity controlled rather than beneficial interest. Only those from whom consideration moved could enforce it. However, today the prevailing view in this country is that the beneficiary as the party in interest has the right to sue. *Brantly on Contracts*, §113 citing Hendrick v. Lindsay, 93 U. S. 143 and the early Maryland cases of Small v. Schaefer, 24 Md. 143; Seigman v. Hoffacker, 57 Md. 321; First Nat'l. Bk. v. Clark, 61 Md. 400; Simons Sons Co. v. Md. Tel. Co., 99 Md. 141.

The transitional history was succinctly set out by the Court of Appeals in Mackubin v. Curtiss-Wright Corp., 190 Md. 52, 56-57:

"The original rule of the common law was that privity between the plaintiff and the defendant is requisite to maintain an action on a contract, even though the contract is for the benefit of a third person. There has been a gradual relaxation of this rule. *Seaver v. Ransom*, 224 N. Y. 233, 120 N. E. 639, 2 A.L.R. 1187; *Ultramares Corporation v. Touche*, 255 N. Y. 170, 174 N.E. 441, 74 A.L.R. 1139. In *Pennsylvania Steel Co. v. New York City Ry. Co.*, 2 Cir., 198 F. 721, 749, Judge Noyes made the following comment on the subject: 'In England and in some of the States the rule is adhered to that the only persons who can sue upon a contract are the parties; that a third person for whose benefit a contract is made cannot maintain an action upon it. The reason for the rule is said to be that there is no privity between the contracting party making the promise and the third person and that the consideration does not move directly from the latter. The rule has the merit of simplicity but is calculated to permit injustice. It is founded, too, upon wholly artificial distinctions. There is no real and substantial reason why, if the parties to a contract recognize the interest of a third person in it and desire and intend to give him a right of action upon it, they should not be able to do so.'

The Courts now generally recognize the right of a third-party beneficiary to sue on a contract made expressly for the benefit of either a donee beneficiary or a creditor beneficiary. A third person is a donee beneficiary where it appears that the purpose of the promisee in obtaining the promise of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary."

Appellants do not dispute Susan Wolff's status as a donee beneficiary and hence real party in interest to the suit. Thus in our view, even though Mrs. Trupp could properly have brought suit in her own name, her ability to do so made Susan Wolff no less appropriate as the plaintiff. On the face of the statute, Md. Rule 203 d, *supra*, it is clear that the rule is operative only

> "Where it appears that the action has not originally been filed in the name of the real party in interest. . . ."

Since appellants do not maintain that Susan Wolff was an inappropriate party to file suit, but only that Mrs. Trupp could also have initiated it, they have not met the condition precedent to the rule. The suit was indeed "originally . . . filed in the name of the real party in interest . . . ," though obviously not the litigant appellants would have preferred.[6]

We note that our rule 203 d stands in sharp contrast to R. 19A, F.R.C.P. providing the federal courts with broad power in joining parties, voluntary and involuntary. Inasmuch as the Maryland rules are patterned after the federal rules, 1 *Poe's Pleading and Practice*, § 295, and the Court of Appeals did not adopt a provision comparable to 19A, we find its absence conspicuous. We must conclude, simply, that R. 203 d means what it says.

Pursuing the same result, appellants unnecessarily quote *Pomeroy on Equity*, 4th Ed., § 114 to bolster Md. Code, Art. 31A, § 11 (now Courts Art. § 3-405) which provides:

> "When declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

We find appellants' reliance upon this section misplaced. Assuming the absence of a necessary party in *Reddick v.*

---

**6.** Although Mrs. Trupp could have brought suit by virtue of Md. Rule 203 b, we leave for discussion, *infra*, the question of whether she was also a "real party in interest."

*State*, 213 Md. 18, 30, the Court of Appeals explained the purpose of that section when the appellant there, as here, complained that an adverse party with an interest in the declaration was not joined. Citing the language of §11 and the general equity rule that all persons should be made parties who are legally or beneficially interested in the suit, the Court explained that:

> "The object of the rule that requires all necessary parties to be joined is to be sure that no one's rights are adjudicated unless he has had his 'day in Court'; and that there will be a complete determination of the matters in dispute in one suit (this latter being subject to certain exceptions not here pertinent). All of the membership of Dr. Chepko's Board testified in the present case. They were fully aware that it was being conducted, and what was involved therein. There is a well established principle of law that a person who has full knowledge of pending litigation and [w]hat it affects, and will determine, his rights, and, who is entitled to appear, but who makes no effort to intervene as a party, and permits a conclusion thereof without objection, such person is concluded by the proceedings as effectually as if he were named on the record. *Albert v. Hamilton*, 76 Md. 304, 311, 25 A. 341; *Rody v. Doyle*, 181 Md. 195, 200, 29 A. 2d 290. Cf. these, *Parr v. State*, 71 Md. 220, 235, 17 A. 1020; *Riley v. First Nat'l Bk.*, 81 Md. 14, 26, 27, 28, 31 A. 585; *Lichtenberg v. Sachs*, 200 Md. 145, 159, 88 A. 2d 450."

*Accord*, 1 *Poe's Pleading and Practice*, § 297.

It is at once apparent from Mrs. Trupp's party disclaimer and formal renunciation of interest that she bound herself notwithstanding the court's decision, *Wilhelm v. Hadley*, 218 Md. 152, *Stinchcomb v. Realty Mtge Co.*, 171 Md. 317, 324 and thereby forfeited her " 'day in court' ". Furthermore, ". . . there [was] a complete determination of the matters in dispute in one suit," *Reddick, supra,* so that appellants were

not subjected to subsequent litigation or inconsistent liability. The dual purposes of Art. 31A, § 11 (now Courts Art. § 3-405) having been met, Mrs. Trupp's non-joinder was inconsequential.

In addition to the preceding legal grounds, strong policy reasons militate against adoption of appellants' position. To hold that Mrs. Trupp was a "necessary" party plaintiff would burden every donor of a conditional gift with the costs and concerns of litigation necessary to enforce the condition. Potential benefactors would hardly be encouraged by such an albatross, portending future litigation despite their attempted divestiture of ownership.

We find specious appellants' additional complaint that the error of making Mrs. Trupp a defendant prejudiced them because she was placed within the exception to the Dead Man's Statute for persons subject to the call of the "opposite party." Had she not been a party at all she would have been eligible to testify just as she was when called as a defendant by her daughter, the "opposite party." Her forced joinder as a party defendant placed appellants in neither better nor worse position.

Appellants do not stop with the "necessary party plaintiff" analysis, but concede that they are fundamentally concerned with Mrs. Trupp's natural predisposition toward the welfare of her daughter, appellee. Conceding arguendo their first question in the next two issues appellants reformulate, in different terms, their original theme.

## Party in Interest

First, they again assert the Dead Man's Statute, arguing that even if she were not procedurally required to be a plaintiff, she was interested in the outcome and the spirit, if not the letter, of the statute precluded her from testifying. Again we are not persuaded by appellants' reasoning.

The Dead Man's Statute, Art. 35, § 3, (now Courts Art. § 9-116) must be read in the light of Art. 35, § 1, (now Courts Art. § 9-101) and its history. *Shaneybrook v. Blizzard*, 209 Md. 304. Prior to 1864 Maryland adhered to the extreme

common law rule which excluded the testimony not only of parties to the suit but all persons having a direct pecuniary or proprietary interest in the outcome. To remedy the hardships created by that rule, in 1864 the Legislature provided in Art. 35, § 1 [7] that witnesses would no longer be excluded from giving evidence by reason of interest "except as hereafter excepted."

The abolition of the disqualification for interest was instituted as part of a more sweeping reform in England where no vestige of disqualification in civil cases remains. In Maryland as in other common law states a compromise relating to transactions with a decedent was forced upon the legislative reformers. In its original form the exception applied to a *party to a contract* with a decedent unless such party was called by the opposite party. It wasn't until the turn of the century that the Dead Man's Statute was broadened to its present form. Laws of Maryland 1902 Ch. 495; 1904 Ch. 661.

Although this exception to the original reform effort has been under heavy attack by eminent legal authorities for the injustice and uncertainty it has bred, the Court of Appeals has quite properly determined that if the rule is to be altered, the General Assembly and not the Courts, will have to do so. *O'Connor v. Estevez,* 182 Md. 541. The Court departs from that premise, if at all, by strictly construing the statute in an effort to disclose as much evidence as the rule will allow. *Cf., Stacy v. Burke,* 259 Md. 390, 404; *Guernsey v. Loyola Fed. S & L,* 226 Md. 77; *Shaneybrook v. Blizzard, supra,* 309; *Sheeler v. Sheeler,* 207 Md. 264, 269; *Russell v. Carman,* 114 Md. 25, 35; *Smith v. Humphreys,* 104 Md. 285, 289; *Horner v. Frazier,* 65 Md. 1, 10.

Considering the current narrow review of evidence to be excluded under the rule, we note at the outset our hearty disinclination to expand the statute to encompass Mrs. Trupp on the basis of appellants' assertion that her heart lay with her daughter.

In construing restrictive statutes, such as ours, the weight

---

7. Ch. 109, Laws of Maryland 1864.

of authority in other jurisdictions holds that one entering into a contract for the benefit of a third person is not an incompetent witness, "unless a real party in interest." Annot., 149 A.L.R. 1130, 1132. The same annotation defines real party in interest as "one who has an interest in the property sought." C. McCormick, *Evidence*, § 65 also refers to such "persons having a direct interest" as "of a pecuniary and proprietary kind, in the outcome." That seems to us a sound limitation on Dead Man's Statute applicability. To hold otherwise would increase *ad absurdum* the uncertainty of an already uncertain statute. A trial judge or chancellor would have to determine competency by some omniscient sense of what a prospective witness really felt in his or her heart.

Although there is no case precisely on point, Maryland precedent, as we have noted, has consistently favored admissibility of testimony in close cases involving the Dead Man's Statute. Indeed, the Court of Appeals has permitted the testimony of:

1. the husband of a party who would obviously benefit emotionally as well as tangibly by his wife's recovery, *Marx v. Marx*, 127 Md. 373;

2. a stockholder of a party corporation notwithstanding obvious similarity of tangible interest differing in degree only, *Downes v. Md. & Del. Ry. Co.*, 37 Md. 100;

3. an officer of a corporation which was a party, *Guernsey v. Loyola Fed., etc., supra;*

4. witnesses, not parties to the suit, who were stockholders or directors of a party corporation, *Whitney v. Halibut*, 235 Md. 517;

5. legatees under a will where the estate would benefit from a recovery by the executor, *Schaefer v. Spear, Ex'r.*, 148 Md. 620;

6. a daughter named as party defendant called by the plaintiff mother notwithstanding her "identity of interest" with the "opposite party" calling her, *Cross v. Iler*, 103 Md. 592;

7. a son where his mother's estate was suing his creditors to enforce a prior lien on stock in his name. In spite of the obvious benefit to the son who was named a party defendant by the estate, he was permitted to testify when called by opposite party. *Duvall, Adm'r. v. Hambleton & Co.*, 98 Md. 12.

On the other hand the Court has held that a party to the suit falls under the restriction notwithstanding his status as a next friend or *prochein ami. Allers v. Leitch*, 213 Md. 390.[8]

While perhaps not completely dispositive, two cases above-mentioned are so analogous to the case at bar as to be persuasive. In *Cross v. Iler*, 103 Md. at 596 a woman sued to enforce a claim against land purchased with her money by her husband who had died. In suing the estate, she was compelled to join her two daughters one of whom was administratrix. The other daughter testified for the mother. This was objected to on the grounds similar to those asserted here by appellants, that the testimony should have been barred because the daughter's interest lay with the mother winning the case as opposed to her formal role as party defendant. The Court of Appeals held that the testimony was properly admitted, relying on *Duvall, Adm'r. v. Hambleton & Co., et al., supra,* 98 Md. 12.

There an administrator sued the decedent's son, a corporation in which he was interested, and a creditor of the son who had levied on stock of the corporation recorded in the son's name. The administrator claimed that the son had borrowed money from his deceased mother to buy the stock and the son had agreed to assign the stock as security. The corporate records did not so reflect. The administrator claimed a lien prior in time to the creditor's lien. The son's interest in seeing the stock go to his mother's estate was obvious, and affirmed when he admitted every allegation of

---

8. In 1885 Trahern v. Colburn, 63 Md. 99, held that a *prochein ami* is not a party within the meaning of the section; however, at that time the statute still dealt with the parties to a contract and contained the phrase "unless a nominal party merely" which had been added in 1868 Ch. 116 but which was left out in the 1902 and 1904 versions.

the bill. The language of the Court of Appeals is so appropriate as to bear repeating:

> "George S. Baldwin, a defendant, as has been seen, in the case in the Court below, was called as a witness by the appellant, the plaintiff below, and his competency to testify is made the subject of exception by the appellees upon the ground that he is not, under the circumstances of this case, an 'opposite party' to the plaintiff within the intent and meaning of our Evidence Act as amended and enacted by Act of 1902, chap. 495. It is insisted that his adverse position as a defendant on the docket does not make him competent as a witness at the call of the plaintiff because of accord between him and the plaintiff as to the object to be accomplished by the suit. The exception to the competency of this witness, however, cannot be sustained. That he is, as a witness, not hostile to the plaintiff (appellant) and may be supposed under the circumstances of the case, to have a bias in favor of the appellant, who called him, as respects the result of the suit, may be properly suggested as reason why the Court should be cautious in weighing his evidence and in the effect to be given to it; but his competency to testify is to be determined by his legal relation to the cause. Under the statute he was competent as a witness upon the call of the 'opposite party,' and his position in the case brings him within this provision of the statute. As respects the object of the suit appearing from the allegations of the bill of complaint of the appellant and its prayer for relief the defendant, Baldwin, had no such identity of interest with the appellant that he could have been properly joined as a plaintiff in the proceeding."
> *Duvall*, 98 Md. at 15-16.[9]

---

**9.** Appellants attempt to distinguish this case by quoting the language indicating that he was a necessary party in the adverse sense which they assert to be different from the position of Mrs. Trupp.

"Relief was sought by the bill as against him, and to establish such

Thus it would seem that Maryland is in accord with the general rule previously mentioned. The persons excluded from testifying are not those with an interest of any sort, but rather traditional real parties in interest and their representatives. Mrs. Trupp, as promisee in a third party donee beneficiary contract had no pecuniary or proprietary interest whatsoever. Any natural predisposition she may have had toward her daughter's welfare did not disqualify her testimony under the statute.

On the Dead Man's Statute issue, appellee argues that, in any case, a vigorous and extreme cross-examination by appellants acted as a waiver of objection to Mrs. Trupp's direct. *Stacy v. Burke*, 259 Md. 390, citing *Leahy v. McManus*, 237 Md. 450 and *Cooper v. Davis*, 226 Md. 371. All of those cases held that an adverse party, who is cross-examined as to a transaction with a decedent, has been "called to testify by the opposite party" and, therefore, his answers are admissible under the express exception to the prohibition of § 3. Thus says appellee, even if Mrs. Trupp were an opposite party in the sense that she was adverse or antagonistic to the interests of appellants, their cross-examination of her effected a calling by the opposite party.

While there can be little question as to the accuracy of her legal premise as a general proposition, by our previous holding there is no need to decide its applicability here.

### Parol Evidence, Fraud Exception

Appellants' next attack on Mrs. Trupp's testimony departs from the Dead Man's Statute. They point to the deeds of gift by which Mrs. Trupp transferred the stock in controversy to Mr. Trupp and argue the applicability of the parol evidence rule "which prevents the destruction of the obligation of a written contract by evidence of preceding or contem-

---

right of relief as against him was the very foundation for the relief sought by the suit as against the other parties thereto." at p. 16.

That sword cuts both ways, however, since it provides authority for the chancellor in his decision to make Mrs. Trupp a party defendant, — a decision we find to be harmless at worst.

poraneous oral agreements." C. McCormick, *Evidence,* § 210. More specifically, appellants note that two early Maryland cases, *Jones v. Slubey,* 5 H. & J. 372, 382 and *Groff v. Rohrer,* 35 Md. 327 applied this rule not only to preclude oral trusts inconsistent or at variance with the expressed intention of a deed, but to trusts for third parties as well. The *Jones* case applied the rule in 1822 to a suit brought by a grantor seeking to set aside his own deed because of his own mistake. It gives us little guidance.

*Groff,* however, though more apposite factually, is significant primarily as an early (1872) recognition of the exception to the parol evidence rule in cases of accident, mistake, fraud or surprise, rather than as support for appellants' attempt to apply the rule strictly:

> "In a case of accident, mistake or fraud, parol proof may be resorted to for the purpose of establishing a resulting trust in property real, when conveyed .... and the same rule prevails where relief is sought on the ground that, through mistake, surprise, or accident, the instrument is framed contrary to the intention of the parties. 'How', observed Lord Hardwick, in *Baker vs. Paine,* 1 Vesey 157, 'can a mistake in an agreement be proved but by parol evidence?' "

The reasoning for the exception is most succinctly iterated in the case relied upon by the chancellor below when ruling on Mrs. Trupp's testimony:

> "No rule is more firmly established or more generally recognized than that which excludes parol evidence offered to vary, contradict, add to or take from a written instrument. But in our opinion that rule, in cases where the execution of a written instrument has been induced by false or fraudulent statements or promises, does not prevent the introduction of evidence showing such facts in any action on the instrument, because such evidence is not offered to vary or to contradict the instrument but to destroy it, and cases dealing with evidence

which, while conceding the validity of such an instrument, nevertheless is offered to contradict or vary it, are parallel to the question." *Councill v. Sun Ins. Office,* 146 Md. 137, 149. *Accord, Schmidt v. Millhauser,* 212 Md. 585, 594.

In explaining the fraudulent promises aspect of the exception, Judge Prescott later wrote in *Tufts v. Poore,* 219 Md. 1, 11-12:

"Maryland has adopted the overwhelming majority rule of the American courts in holding that fraud may be predicated on promises made with a present intention not to perform them. *Councill v. Sun Ins. Office, supra; Brager v. Friedenwald, supra; Gale v. McCullough, supra; Ortel v. Upper Ashburton Realty Company,* 171 Md. 678, 683, 190 A. 239. See also 23 Am. Jur. *Fraud and Deceit,* para. 106; *Restatement, Contracts,* para. 473; Annos., 51 A.L.R. 63, 68 A.L.R. 637, 91 A.L.R. 1297, 125 A.L.R. 879. The gist of the fraud in such cases is not the failure to perform the agreement, but the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact non-existent, and the deception of the promisee by such false promise."

Appellants do not contest the validity of the law as set forth; however, they deny its applicability to this case. Their concern first is that nowhere in the Bill of Complaint is there a precise allegation that the deeds of gift were "procured by fraud or in violation of a confidential relationship." [10] We may dispose of that contention peremptorily.

---

**10.** Nowhere is there discussion of admissibility of testimony of abuse of confidential relation as an exception to the rule of exclusion. We restrict our response to this evidentiary question as presented, *i.e.,* allegations of fraud only, notwithstanding the chancellor's final opinion turned on abuse of confidential relation.

In *Spangler v. Sprosty Bag Co.*, 183 Md. 166, 173, the Court of Appeals explained:

> "General charges of fraud, or that acts were fraudulently committed are of no avail, unaccompanied by statements of specific facts amounting to fraud; and on the other hand, if *there be sufficient facts stated to disclose fraud, it is unnecessary to charge in express terms that the acts complained of were fraudulent.*" [Substantial authority omitted, emphasis added.]

Not only was the detailed recitation of the facts in the Bill of Complaint sufficient to amount to allegations of fraud but the record clearly discloses throughout that the appellants were aware that an equitable fraud theory was at the root of the appellee's case.[11] That being so the purpose of informing appellants so as to avoid the element of surprise and permit them to prepare their defense properly has been fulfilled. The bill itself details the facts and that the attorneys concluded that the Bill charged fraud is attested by the proliferate statements so acknowledging throughout the record. We could adopt as if our own the language of *Spangler*, 183 Md. at 174 describing the facts in the Bill of Complaint which amounted to fraud:

> "We do not see how they could be stated with more particularity. They give the defendant ample notice of the plaintiffs' claims and she will have a full opportunity to deny or explain them. She has

---

11. Examples of the expressed knowledge appeared intermittently from attorneys for appellants.

"(The Court) Do you believe the plaintiff has charged undue influence? I haven't heard anything about that.
(Mr. Mitchell) No, but they have charged fraud.
(The Court) In essence you are correct."

"(Mr. Hochberg) Yes that is so. What Mr. Sykes says is exactly correct. We are looking for the true feelings, and don't forget we are [charged with] conceiving a monstrous fraud at or about this time. This is late '64 or early '65. Now, if your Honor feels that the state of mind of Mr. Trupp just shortly before this theft of his wife's securities — and that is what it is if your Honor accepts it — this is a theft of her securities, a defrauding of this woman. . . ."

knowledge of the charges which she is compelled to meet. This is the requirement of good pleading."

The appellants then again cite *Tufts v. Poore,* 219 Md. at 10, this time for the premise that "a fraudulent intent not to perform a promise cannot be implied or inferred from the mere failure to perform the promise." However, appellants should have read on. The Court was speaking "with reference to . . . the permissible inference of . . . intention at the time of making a promise." It prefaced its expostulation with a recognition of the difficulty of proving a person's intention or state of mind at any particular time. Citing *Lipp v. Lipp,* 158 Md. 207, 216, it repeated the premise quoted by appellants that the inference of a fraudulent preexisting intent not to perform a promise cannot be inferred from the failure to perform the promise alone:

> "But, it may be considered with the subsequent conduct of the promisor and the other circumstances surrounding the transaction in sustaining such an inference. *Lipp v. Lipp, supra,* at page 216, and page 219; *Councill v. Sun Ins. Office,* 146 Md. 137, 150, 126 A. 229; Annos., 51 A.L.R. 165, 125 A.L.R. 892; *Cutler v. Bowen,* 51 P. 2d 164 (Cal. App., 1935). Cf. 1 Moore on *Facts,* sec. 100. And it has been stated that under certain conditions, a failure or refusal to perform is strong evidence of an intent not to perform the promise at the time it was made, as where only a short period of time elapses between the making of the promise and the failure or refusal to perform it, and there is no change in the circumstances. 24 Am. Jur. *Fraud and Deceit,* sec. 287; Anno., 51 A.L.R. 165. It has also been stated the fact that a party is largely benefited by a will prepared by him, or in the preparation of which he takes an active part, is a suspicious circumstance, of more or less significance according to the facts of each particular case, to be considered by the jury in determining the question of fraud. *Griffith v. Diffenderffer,* 50 Md. 466.

In valuing facts relating to the question of a present intention not to perform a promise made, courts have frequently stressed the importance and significance of the situation of the parties, the relations existing between them, the activity of the promisor in procuring the instrument, and the failure of the promisor to perform. *Lipp v. Lipp, supra,* at page 217. Applying these principles to the facts of the instant case as related above, the evidence permitted an inference that at the time Mrs. Tufts made the promise to her mother, she did not intend to perform it. *Councill v. Sun Ins. Office, supra,* 146 Md. 150; *Lipp v. Lipp, supra,* 158 Md. 219; *Cutler v. Bowen, supra; Restatement, Contracts,* para. 473, comment (b); *The Legal Effect of Promises Made with Intent Not to Perform,* 38 Columbia L. Rev. 1461."

All of the facts recited in the Bill of Complaint of the deceased's actions and failures to act sufficiently apprised appellants. The sound reasoning behind this exception to the exclusion of parol evidence was stated in *Councill v. Sun Ins. Office, supra,* 146 Md. at 151:

"And without going to the extent of holding that as a general rule a contemporary parol agreement to do or give something in addition to the consideration named in a written contract may be shown, in our opinion where such an agreement was made in the execution of a design to induce the execution of the written agreement by parol promises not intended to be performed, it may be shown by oral testimony as evidence of fraud, for to hold that under such circumstances such evidence was not admissible would be to subvert a rule of law intended to prevent fraud into a device to promote it."

### Attorney-Client Privileged Communications

Unable to bar the testimony of the most devastating

witness, appellants turn to the only other witness of consequence against them. Sidney Weiman was the attorney to whom Bernard Trupp took his wife Florence in order to consummate the transfer of stock. Weiman, who was also a certified public accountant, had originally represented Bernard Trupp on other matters, including taxes, preparation of articles of incorporation and a will. He advised Mr. and Mrs. Trupp of the method he thought best for carrying out their intentions in this matter, alluded particularly to the gift tax consequences, and ultimately prepared their gift tax returns. His testimony, which was generally in accord with that of Mrs. Trupp, was a significant if not the compelling factor in the chancellor's decision. We recognize that the testimony of an attorney concerning his client carries great weight because of its imprimatur of impartiality. The personal representatives of Mr. Trupp's estate and of the trust benefitting his brothers asserted the privilege of confidentiality between lawyer and client on behalf of decedent. Maryland follows the common law in granting clients a privilege against disclosure of communications with their attorneys. Dissected, the rule reads:

> "Where legal advice of any kind is sought
>
> from a professional legal adviser in his capacity as such
>
> the communications relevant to that purpose
>
> made in conference
>
> by the client
>
> are at his instance permanently protected
>
> from disclosure by himself or by the legal adviser
>
> except the protection be waived."
>
> 8 J. Wigmore, *Evidence* (McNaughton ed.) at 546.

The policy rationales upon which the privilege rests are well known:

> "It is founded on a regard to the administration of justice, which cannot go on without the aid of men skilled in jurisprudence . . . . If the privilege did not

exist at all, everyone would be thrown on his own legal resources; deprived of all professional assistance, a man would not venture to consult any skillful person, or would only dare to tell his counselor half his case." *Greenough v. Gaskill*, 1 My. and K. 98.

Indeed, we might add, the constitutional guarantee of assistance of counsel would be empty and meaningless.

Maryland courts have had occasion to interpret this privilege infrequently and when called upon to do so have often frugally limited discussion. From these few holdings, however, we have discerned that the privilege is one of the client and not of the attorney; that it is not destroyed by the death of the client, *Tillinghast v. Lamp*, 168 Md. 34, 42; *Hodges v. Mullikin*, 1 Bland 503; that the communication must be "confidential" and thus not made in the presence of a third person, *Koogle v. Cline*, 110 Md. 587; that it is not absolute and may be waived expressly or impliedly; and that there must be an intention of confidentiality. *Shawmut Mining Co. v. Padgett*, 132 Md. 397, 404. Furthermore, communications from a client to the attorney who prepared his will, respecting its preparation and execution are not, after the client's death, within the protection of the rule in a suit between parties claiming under him. *Benzinger v. Hemler*, 134 Md. 581.[12] These cases, limiting their reasoning as narrowly as they do, are not easily applied to other factual circumstances. They provide us with enough guidance, however, to rule upon the chancellor's limited admissions of the attorney's testimony.

The chancellor took the testimony subject to exception which was later formalized in a written motion to strike. Rather than analyzing two thousand pages of testimony in order to rule on each objection made during the four week

---

**12.** Benzinger distinguished but did not reverse Chew v. Farmers' Bank, 2 Md. Ch. 231 which invoked the rule as to anything communicated by the decedent to her attorney "which could, if revealed by the witness, operate to [decedent's] prejudice . . . ." Benzinger pointed out that in Chew the rule was applied against one who was not claiming through the testatrix but rather was in the position of resisting the claim made by her.

trial, the court preliminarily ruled in the form of a letter regarding all questions of evidence received by him during the trial which included not only the attorney-client privilege but the other evidentiary questions treated in this opinion. The chancellor's ruling on the attorney's testimony was that such evidence given by the attorney relative to communications with Florence Trupp, whether alone or in Bernard Trupp's presence was admissible. Any testimony relating to communications to or from Bernard Trupp, however, whether or not in the presence of Florence Trupp he held inadmissible as barred by the privilege. His reasoning was:

> "It has been argued that since the consultations with Sidney Weiman were joint, that is to say, both the decedent and Florence Trupp were present, the privilege is then lost as far as Bernard Trupp is concerned because the element of confidentiality has been lost. See Wigmore, Evidence, § 2311, page 599 (McNaughton Ed. 1961). This would be true, it seems, if Florence Trupp was merely there with her husband and not in the capacity of a joint client. See *Koogle v. Cline*, 110 Md. 587, at p. 607 (1909). If, however, Florence Trupp was a client as well, *i.e.*, seeking Weiman's advice on the issue of the stock transfers, as it appears she was from the record, then it would seem that there would be no loss of the privilege as far as Bernard Trupp was concerned merely because of her presence. Wigmore distinguished at page 639, § 2328 as to joint clients, concluding that one client cannot waive the privilege of the other, and it should be noted that Mr. Snyder made it crystal clear throughout the record that he was not waiving the privilege as far as Bernard Trupp was concerned."

That limited ruling accorded with the chancellor's persistent pattern of prudence. Since we find only that his ruling was unduly restrictive, we affirm his actions as to that portion of the evidence which was admitted, though for different reasons.

The chancellor apparently confused two conceptually distinct sections, 2312 and 2328 of 8 J. Wigmore, *Evidence*, (McNaughton ed.). In § 2312, Dean Wigmore wrote:

"There may be a relative, not an absolute confidence.

The chief instance occurs when the *same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other."

It was that section upon which the Court of Appeals relied in *Koogle v. Cline*, 110 Md. 587, 607, cited by the chancellor. There a father conveyed land to five children by a deed stating the consideration to be $8,000.00 and reserving a life estate to himself. After his death his administrators filed suit for the unpaid consideration. The attorney who prepared the deed was permitted to testify as to conversations with and by the decedent whose son, a grantee in the deed and defendant in the case, was present. The Court of Appeals dealt with the question of admissibility over the privilege claimed by the decedent's estate in one sentence:

"We agree with the Court below as to the admissibility of so much of the testimony of Mr. Coblentz [the lawyer] as related to statements made by the deceased in the presence of Otho J. Shank, one of the grantees in the deed and defendants in this case. 1 *Greenleaf on Evidence*, sec. 245 (16th ed.); 4 *Wigmore on Evidence*, secs. 2311-2312; *Hebbard v. Haughian*, 70 N. Y. 54; *Hummel v. Kistner*, 182 Pa. 216, 37 At. Rep. 815."

We find *Koogle, supra* and Wigmore, § 2312 dispositive of this issue. The similarities between *Koogle* and the present

case are obvious. The presence of the son there, a grantee-defendant, can be equated to the presence of Mrs. Trupp here, a grantor-promisee-defendant. In both instances, the two persons consulting with the attorney had independent, potentially adverse interests affected at the time of the conversations. The statements of each were not confidential because they were revealed in the presence of the person[s] with whom he or she was contracting. When the adverse interest of Mrs. Trupp, an original party to the deed of gift, subsequently resulted in a law suit, she had the option of waiving the confidential privilege which otherwise would have precluded Mr. Weiman's testimony.

Professor McCormick is in accord, and explains some of the policy reasons for the rule. C. McCormick, *Evidence*, § 95 at 192-193:

> ". . . it will often happen that the two original clients will fall out among themselves and become engaged in a controversy in which the communications at their joint consultation with the lawyer may be vitally material. In such a controversy it is clear that the privilege is inapplicable. In the first place the policy of encouraging disclosure by holding out the promise of protection seems inapposite, since as between themselves neither would know whether he would be more helped or handicapped, if in any dispute between them, both could invoke the shield of secrecy. And secondly, it is said that they had obviously no intention of keeping these secrets from each other, and hence as between themselves it was not intended to be confidential. . . ."

We recognize that Susan Wolff, who initiated this law suit, was not present during Mr. and Mrs. Trupp's conversations with their attorney. Unlike other conceivable third parties, however, Mrs. Wolff as the beneficiary under her mother's contract, sought to force Mr. Trupp's obligations. The rule which provides that the privilege attaches to conversations of two persons with an attorney

when a suit subsequently arises between those two persons, should apply with equal force to persons claiming under them.

As is evident in the chancellor's opinion, quoted *supra*, he chose to disregard Wigmore, § 2312 in favor of § 2328:

> "Where the consultation was had by *several clients jointly*, the waiver should be joint for joint statements, and neither could waive for the disclosure of the other's statements; yet neither should be able to obstruct the other in the disclosure of the latter's own statements."

That section explains the waiver rule's applicability when suit is brought by one who was neither present during the conversations with the attorney nor claims under one of the original parties to the contract.[13]

---

**13.** We are bound by the chancellor's finding of fact unless clearly erroneous. Md. Rule 1086. Seemingly he found the Trupps to have been *joint* clients. The point is significant because, of course, if Mr. Trupp was not a client at the time of the conversation, his estate had no privilege to assert.

While that conclusion was not *clearly* erroneous, one reviewing the testimony could as easily have found that Mr. Trupp was not a "client" of Weiman's in this transaction at all.

Nothing in the record indicated that advice was given to or sought by Bernard Trupp relative to the transaction from which this litigation ensued. The only relevant advice to him was gratuitously offered and obviously disregarded, *i.e.*, to make a new will to carry out the condition of the gift. Weiman's opinion, which apparently guided the chancellor, that he represented both Mr. and Mrs. Trupp in this transaction, reflected his recognition that such service would redound to the ultimate benefit of both but that was not conclusive of the professional relationship. It matters not that the underlying purpose to be effected from the procedural advice sought, provided a benefit to the deceased. Nor does it matter for present purposes that Mrs. Trupp followed the advice of an attorney to whom she had been directed and who had theretofore represented her husband. The advice to transfer by deed of gift was to save Mrs. Trupp taxes and the advice that it be bequeathed by will rather than dividing the life interest from the remainder was intended to carry out the condition she placed upon the gift. Upon equitable principles alone it would be unjust indeed if the survivors of the decedent were now permitted to use this privilege to defeat the conditions imposed upon Mrs. Trupp's act of kindness toward her husband. *Cf.* Hunter v. Van Bomhorst and Co., 1 Md. 504, 510. The record strongly suggests that Weiman represented Mrs. Trupp in this transaction. We wonder how much "confidentiality" a beneficiary of a gift requires when he need only decide whether to accept or reject the conditions of conveyance.

### Appellants' Conduct *Ante Litem Motam*

Considerable evidence was introduced relating to the conduct of the Trupp brothers in the period following Bernard's death. The evidence showed that one brother announced he had found a letter requesting a 30 day mourning period. The brother had apparently prepared the request himself and used it to buy time hoping to have the transfer of the stock effected under the brothers' trust before Mrs. Trupp became aware that her husband had not by will conveyed the stock in question to her daughter. The efforts to transfer the stock during that period were also admitted into evidence.

The same brother represented to the orphans' court that a facsimile envelope was the original. He also misled Mrs. Trupp and her daughter and husband into believing he had entered Bernard's safe deposit box for the first time while with them, attempting to demonstrate that there was no later will than that previously disclosed by the brother.

Appellants complain that the evidence admitted concerned incidents which occurred after execution of the agreement sued upon and even after Bernard's death. Thus they argue, the evidence had no probative value on the issue adjudicated. Citing C. McCormick, *Evidence*, § 152, they point to the chancellor's discretionary right to exclude evidence if its probative value is outweighed by undue consumption of time, prejudice or surprise to a party who has not had reasonable opportunity to anticipate such evidentiary offer.

Since this matter was twice decided, pretrial and during trial, there could be no element of surprise. Nor do we find abuse by consumption of time, lengthy as it was. The second element, prejudice, is precisely the purpose of any evidence. We are concerned, however, with the balance between probative value and "of undue prejudice or of confusing the issues or of misleading the jury [factfinder] . . . ." McCormick, *supra*. For us to find an abuse of that discretion, we must see the auncel with but minimal weight on the side of probative value. To the contrary, we find a far more equal balance.

On a preliminary motion to strike "unnecessary" matter from the Bill of Complaint, this question was first decided. In denying the motion the chancellor said:

> "The actions might be indicative of an admission by the defendants of the rights of the plaintiff in the estate. In attempting to ascertain the rights of parties the courts may always look to the acts of the parties with particular reference to their application as being interpretative of the rights. Then, too, it would appear that . . . the defendants, who are not bona fide purchasers for value, may or may not have been acting in good faith. If, in good faith, they believed that they had an estate free and clear of all equitable or legal encumbrances their liability, if any, to the plaintiff would probably be limited and would be measured by the standard by which one should treat the property of others as he would his own. If, on the other hand, the allegations were to be fulfilled by the proof, bad faith on the part of the defendant may be reasonably inferred and any losses of the estate may then be differently measured."

Even beyond that, we note that the actions might very well have indicated a prior knowledge by the brother of an intent by the decedent to perpetrate what was alleged as fraud. A great latitude of inquiry is allowed in cases of fraud, or where fraud is alleged, and any fact, however slight, if at all relevant, may be admitted so long as the evidence offered has some pertinency to the issue. *Jameson v. Hall*, 37 Md. 221, 233.

The chancellor, who in rendering his final opinion was "not particularly concerned about that" evidence, had not in any case abused his discretion.

## Contracts Against Public Policy

Relying on *Smith v. Smith*, 189 Md. 1, appellants argue that the giving of what appeared to be an outright gift for the purpose of attempting a tax saving cannot now be

gainsaid by Mrs. Trupp. We note, however, that although questioned by appellants' expert, the procedure used, following advice of counsel whose judgment was apparently bona fide, has not by the record here been adjudged nor even indicated illegal. In fact there is testimony by experts that counsel erred and, indeed, *more* taxes were paid by the procedure used than would have been had an irrevocable trust device been used.

Appellants' expert, an attorney renowned in his field,[14] acknowledged the difficulty of the question of whether the marital deduction should properly have been taken. He further acknowledged, after being pressed, that few practitioners had the expertise to draw from in making such judgments. We see no attempt to defraud in violation of public policy by acting upon bona fide advice of counsel even if erroneously, though not fraudulently given. " . . . it must be a very plain case to justify a court in holding a contract to be against public policy." *Trust Estate of Woods, Weeks and Co.*, 52 Md. 520, 538.

### Sufficiency of the Evidence

Appellants argue at length over the posture of the law as to the shifting burden of proving a confidential relationship which was found to exist by the chancellor. Appellee replies by citing the presumption of a husband's dominance in a marital relationship, *Manos v. Papachrist*, 199 Md. 257,[15] and the close scrutiny a gift by a wife to a husband will receive from a court of equity, *Fant v. Duffy*, 232 Md. 481. Notwithstanding the intriguing questions and interesting arguments we see no purpose in further extending an overlong opinion by discussing them. When rendering his opinion the chancellor said:

> " . . . , I feel that there was a confidential relationship here. But, more important, I feel that the Plaintiff has met the burden and so, therefore, I

---

14. Shale D. Stiller, Esquire.

15. We are not unaware of the shaky foundation upon which the presumption rests in light of the Equal Rights Amendment, Maryland Declaration of Rights, Article 46.

do not need to rule whether or not the burden is on the Defendants because, in any event, I feel in this case the Plaintiff has amply met the burden of proof. I feel that Bernard Trupp was a very brilliant, skilled, well-regarded businessman in this community, and I believe that he was the dominant actor in this transaction. I believe Mrs. Trupp when she testified that she had a sheaf of papers put before her. I do not find her to be as skilled and sophisticated as counsel for the Defendants would have me believe. I am mindful there is a marital relationship here, and I am mindful that the authorities are somewhat divided as to a confidential relationship in such cases, but I don't believe I need to reach that point because I think the Plaintiff has met the burden of proof that the agreement was by and between Mrs. Trupp and Mr. Trupp that there would be a gift made . . . .

Mr. Trupp certainly had a great deal of independent business experience. The Court heard testimony as to certain corporations that he had formed and that apparently had met with some degree of business success. I will find as a matter of fact that Mr. Trupp did handle the joint business affairs of himself and his wife. I will find as a matter of fact that she did regard him as her husband and as her financial adviser as far as her property was concerned, with the exception, of course, of certain items over which she had very little, if any, control . . . .

I feel that Mrs. Trupp had complete trust and confidence in her husband and in his business ability. She testified, and I believe her, "I trusted him thoroughly." I can readily understand, having heard many cases, the fact that when presented with a series of papers she would readily sign them and did so without asking very many questions. I cannot judge other women by the acumen my own wife may display, and I don't think counsel should

judge other women by the acumen their wives may display. I found Mrs. Trupp to be completely dependent in a financial way upon her husband, as far as advice is concerned.

Gentlemen, as the trier of the facts in this case, I have carefully considered all of the testimony and all of the law. I have found no case on all fours as far as this particular problem is concerned. To use Mr. Goldstein's words, as the trier of the facts, I am convinced not only by a preponderance of the evidence but "beyond all reasonable doubt" that Mrs. Trupp testified truthfully that she and her husband did, in fact, agree that the securities would be transferred to him and that upon his death they would revert to Susan C. Wolff."

We are not unmindful of the strict burden of proof necessary to establish a constructive trust, that it must be clear and convincing, *Kelley v. Kelley*, 178 Md. 389, or clear, satisfactory and convincing, *Dove v. White*, 211 Md. 228; nor are we unmindful of the limits of our review, Md. Rule 1086, in light of it being a "determination of fact and not of law as to whether a confidential relation exists." *McCoy v. Clark*, 21 Md. App. 198, 204-205 quoting *Zimmerman v. Hull*, 155 Md. 230, 239.

Our review of the record reflects sufficient evidence to bear out the finding of a confidential relation by the chancellor without resort to any presumptions. There was adequate evidence here to sustain a finding of dominance in fact. Furthermore the chancellor reasonably found collateral facts he deemed consistent with appellee's theory of the case:

" . . . However, good common sense, I believe, would dictate to the trier of the facts, which in this case is the Chancellor, that a woman who had a very casual relationship, to classify it kindly, with her brothers-in-law would certainly not make a gift absolutely to her husband, who was in fact the dominant party, with the full knowledge that the

brothers-in-law could very possibly benefit from such a gift. I think the theory advanced by the Plaintiff makes good common sense. In other words, the Plaintiff, Susan C. Wolff, the daughter of the donor of this gift, would enjoy the shares of stock and possibly the income therefrom upon the death of Bernard L. Trupp. This seems entirely credible.

The evidence was sufficient to sustain the verdict and judgment of the chancellor.

### Credits and Set-Offs

Appellants contend arguendo, that if we affirm the decision below, they should be reimbursed the expenses of appealing the case (personal representative of the estate and the trustee). They also feel that since Mrs. Trupp's gift tax, initially paid by her on the advice of Sidney Weiman, was reimbursed to her by Mr. Trupp, Susan Wolff should compensate the estate. This issue was not raised below, Md. Rule 1085, and in any case shows little reason for support.

More reasonable (although not preserved as an issue below either) is the argument that the appellants have paid income taxes on the dividends since the death of Bernard Trupp in 1968. Although the appellants are required to account for dividends no allowance was made for the taxes paid on them. The problem is compounded by the three years during which the case was held *sub curia* following the trial which ended February 10, 1971 and was decided on March 1, 1974. While the delay was unexplained the fault may not now be shifted for the failure of appellants to take precautionary measures. To protect themselves the appellants could have placed the dividends in an interest bearing escrow account pending the outcome. The Bill of Complaint filed on October 21, 1968 and the injunction preventing sale of the securities all served the appellants adequate notice that the funds were in jeopardy. The decision to pay taxes on the dividends and use them as their own was a decision within their aegis, and should not now serve to detriment the rightful owner of the securities.

## Cross-Appeal

Appellee, cross-appellant, complains that a limited sale of securities was permitted by the court to pay estate taxes due. A protective refund claim was filed by the executor only after a judicial struggle. After appeal was noted here cross-appellant was informed that:

- (a) the government had denied the claim,
- (b) a substantial deficiency was asserted in the estate extraneous to the subject matter here;
- (c) cross-appellee executor had "invoked the jurisdiction of the United States Tax Court over both the government's assessment of the deficiency and the protective refund claim of the estate."

Cross-appellant now claims that because of a substantial deficiency the refund claim will be impaired, and that "the decree should be modified to make clear that the court below retains jurisdiction of any claim of the plaintiff against defendants for reimbursement of estate taxes to the extent that the pursuit of the refund fails to result in collection."

We will make no such holding which would be necessarily equivocal, dependent upon facts not before us, and the outcome of a federal court case.

## Interest on Dividends

Cross-appellant submits that interest is "recoverable as a matter of right where the money claimed has actually been used," citing *Affiliated Distillers Brands Corp. v. R. W. L. Wine and Liquor Co.*, 213 Md. 509, 516; *Atl. States Constr. Co. v. Drummond Co.*, 251 Md. 77; *Mullan Contracting Co. v. IBM Corp.*, 220 Md. 248; *St. Paul at Chase Corp. v. Manufacturer's Life Ins. Co.*, 262 Md. 192, 234-236.

We do not read those cases as going so far as appellant contends. To the contrary we find the rule to be that stated in *Atl. States Constr. Co.*, at 85:

"Ordinarily the matter of interest is left to the

discretion of the jury or the court sitting without a jury." *Accord, St. Paul at Chase, supra,* at 236.

The Court pointed out, as did *Affiliated Distillers Brands Corp., supra,* at 516, that:

"... this general rule is subject to certain exceptions that are as well established as the rule itself."

The exception then discussed by both cases dealt with contracts where money was payable on a day certain. There is no evidence nor allegation that cross-appellees were the cause of the inordinate delay in this litigation running nearly six years *ab ovo usque ad malo.*

> *Judgment affirmed.*
> *Costs to be paid by appellants.*

*Menchine, J. dissenting:*

Assuming, without agreeing, that an issue of fraud had been properly pleaded and that legally sufficient evidence thereof had been shown to admit parole evidence to contradict the express terms of a written contract, I must dissent because of my conclusion that in any event Florence Hendler Trupp should have been barred as a witness when offered by the plaintiff, Susan Wolff.

Although the form of the subject litigation was a bill for declaratory relief initiated by Susan C. Wolff, the true object of this action is to declare that a written contract executed by her mother Florence Hendler Trupp as a deed of gift absolute in form to Bernard L. Trupp, now deceased, may, in effect, be reformed and declared to be a wholly different contract. The determination of such an issue by a court of equity cries out for prosecution of the action in the name of the mother as the real party in interest as the contracting party. Maryland Rule 203 a.

The rule declared in *Eastern State Hospital v. Graves,* 52 S. E. 837, (Virginia, 1906) has particular relevance here. In *Eastern* it was said at 838:

"It is further well settled that the courts will

determine who is the real party in interest by a reference, not merely to the name in which the action is brought, but to the facts of the case as they appear in the record."

In 30A C.J.S., Equity, § 142, at 113, it is said:

"The term 'necessary parties' also includes persons who, while not necessary or indispensable on account of their own interest, yet are so connected with the subject matter of the controversy that it is necessary to have them before the court for the proper protection of those whom the decree will necessarily and directly affect. A defendant cannot be required to litigate questions which primarily and directly involve issues with third persons not before the court."

It is further said in § 143, at 115-16:

"All the parties to a contract are ordinarily indispensable parties to a bill in equity for its enforcement or for its rescission and cancellation or to enjoin its performance or its breach, particularly where they have joint or common rights or liabilities. The rescission of an agreement requires the presence of all claiming property through such agreement."

In *Crook v. Brown*, 11 Md. 158, it was said at 171:

"The question [who are necessary parties] must depend, in a great measure, upon the object, as well as the subject of the bill, the relief sought, the privity between the parties, and the manner in which their several interests may have arisen. It is impossible to state a general rule applicable to all cases. The most eminent chancellors have used different language in defining the doctrine as to parties; and the elementary works on pleading, as well as decided cases, show a great variety of exceptions."

Although not directly on point, the case of *Ward v. Hollins*, 14 Md. 158, declares a principle that I conceive to be analogous. In *Ward*, wherein the bill of complaint sought to void a deed as fraudulent, it was said at 167:

> "The object of the proceedings being to assail the deed of the 28th of December, 1854, either for the purpose of having it rectified or vacated, all the parties to the deed are necessary and proper parties to this cause, without whom no valid decree can be passed."

This is in accord with the generalization declared in Miller, Equity Procedure (1897), at 26:

> "All persons having an interest in the object of the suit ought to be made parties."

The trial judge refused to make the mother a party-plaintiff at the request of the defendants. His refusal was error. That error permitted the call of the mother as a witness and permitted her to repudiate the specific terms of her own written agreement and to detail a completely different contract, although the lips of the other party to the formal document were sealed in death. Thus form was exalted over substance and the intended safeguards imposed by the Dead Man's Statute reduced to a mockery. The mother should have been declared a necessary party-plaintiff. She should thus have been eligible to testify only in accordance with Courts Article § 9-116. (Formerly Article 35, § 3.)

The *sua sponte* action of the trial judge in making her a *party-defendant* furnished the *coup de grace* to the restrictions of the statute by facilitating her call by the *nominal opposite* party — who was *in reality* her alter ego. The majority acknowledges that the mother *could* have instituted the action. Is there any doubt that in such a case she would be silenced by the statute? The filing of the action in the name of the daughter is a transparent — and now successful — effort to unseal her lips. Thus she achieves by subtlety and indirection the ability to offer personal

testimony in conflict with her formal actions without concern for rebuttal because the other party to her contract is deceased.

I would remand for a trial in a form in which the mother was a party-plaintiff. The majority declares: "To hold that Mrs. Trupp was a 'necessary' party plaintiff *would burden every donor of a conditional gift with the costs and concerns of litigation necessary to enforce the condition.*" (Italics supplied.) This comment conveniently and completely overlooks the fact that the true purpose of the subject litigation was not to *enforce a condition* but to *establish that there was a condition* in the face of formal written acknowledgements by the mother to the contrary.

I would reverse.